PYLE, Judge.
[1] Kristy Burnell (“Burnell”) appeals the trial court’s determination that she refused a certified chemical test during a traffic stop, which resulted in the suspension of her driving privileges pursuant to Indiana’s Implied Consent Law. On appeal, she argues that she consented to take the test and that her conduct was not tantamount to a, refusal. We affirm the trial court’s order, holding, as' a .matter of first impression, that any answer short of an unqualified, unequivocal assent to a properly offered certified chemical test constitutes a refusal.
[2] Affirmed.
Issue
Whether the trial court erred in determining that Burnell refused a certified chemical test under Indiana’s Implied Consent Law.
Facts
[3] On July 3, 2014, Officer Dave Ki-nyon (“Officer Kinyon”), with the Carmel Police Department, observed Burnell driving her car on Carmel Drive in Hamilton County. Burnell ran a stop sign and made an improper turn, and Officer Kinyon, along with two other officers, conducted a traffic stop.
[4] Officer Kinyon noticed an odor of an alcoholic beverage coming from Burnell. He also noticed that her speech was slurred, her eyes were bloodshot, and her balance was' unsteady. Officer Kinyon performed a number of field sobriety tests on Burnell. The field sobriety tests were recorded by Officer Kinyon’s in-car video system. Burnell failed every test. After the field sobriety tests, the following colloquy took place between Burnell and Officer Kinyon:
Officer Kinyon: I do have probable cause to believe that you have operated a motor vehicle while intoxicated and I must now offer you the opportunity to take a chemical' test, and inform you that your refusal to take a chemical test will result in a suspension of your driving privileges for one year. If you have at least one previous conviction for operating while intoxicated, your refusal to submit to a chemical test will result in a suspension of your driving privileges for *774 two years. Will you now take that chemical test?
Burnell: I don’t know. I—I—I would really prefer it if you could call my uncle.
Officer Kinyon: This is something— you’re an adult—this is something that you need to handle on your own. Okay. I need a yes or no.
Burnell: Yeah, yeah but—I’m and [sic] adult, but, I—I
Officer Kinyon: Okay Kristy, I’m going to explain something to you, okay. I’m a relatively patient person, but this is one of [sic] circumstances where I don’t have a lot of patience.
Burnell: I can’t get [sic] have another one ...
Officer Kinyon: So I need—I need you to get—I need to get—a certain ...
Burnell: I got in trouble like two years ago.
Officer Kinyon: I need to—So you’ve [ ] had an OWI before?
Burnell: Two years ago. Yeah.
Officer Kinyon: Was that here in Indiana or was that down in Florida.
Burnell: No. It was—it was in—in Palm Beach.
Officer Kinyon: In Palm Beach? Well—
Burnell: Bruce is my uncle, and he’s my best friend.
Officer Kinyon: I understand that. You’ve told me that several times. Burnell: I don’t even—I don’t even drink and drive. I’ve had two fucking beers.
Officer Kinyon: Okay, so I need an answer. Are you willing to take the test or not? Okay?
Burnell: Well, I mean if I take it, I’m going to jail.
Officer Kinyon: I’m not going to argue with you. But I need a yes or no answer. You have the right to refuse, but I need an answer as to whether you’ll take that test or not. And that’s something I’m not—
Burnell: Well if I refuse, I’m going to jail either way. So yeah, I guess I gotta take it.
(Tr. 22-25; App. 10)
[5] At this point, Burnell then began to walk away from Officer Kinyon, and he grabbed her arm to stop her. She told him not to touch her and began moving away from the officer again. Officer Ki-nyon, along with an assisting officer, grabbed Burnell and placed her in handcuffs. Officer Kinyon deemed her behavior as a refusal to submit to the chemical test, and placed her under arrest.
[6] On July 9, 2014, the State charged Burnell with operating a vehicle while intoxicated with a prior conviction within the previous five years as a Level 6 felony. On July 22, 2014, the trial court suspended her license for refusing the chemical test. Burnell filed a petition for judicial review of the suspension on October 2, 2014.
[7] The trial court conducted a hearing on November 14, 2014. During the hearing, both parties agreed that there was probable cause to offer a chemical test, and the only dispute was whether Burnell had refused the test. Officer Kinyon testified, and video from his in-car police camera was played for the trial court. After considering the evidence, the trial court ruled from the bench as follows:
Well, the words as [the defense relates] them are very neutral; very passive, very non-argumentative. The transcript that you offered to let me read instead of viewing the video would have left that impression in my mind that-what was happening out there was very neutral, very passive, very ordinary. That’s not *775 what I saw in the video, however. She did say the words, “I gotta take it” and she did walk away from him at the same time. It looked to me like she put his— put her hands on him. It was at that point that the other officer stepped in and put cuffs on her. No, she wasn’t jumping up and down. No she wasn’t belligerent, but she wouldn’t stop interrupting him. She kept referring to her uncle the police officer, her best friend. She obviously wanted to argue with [the arresting officer], and was arguing with him. I consider her response to be very equivocal, certainly not something that was indicative of only one meaning..
As the officer testified, he was responding to- the totality of the circumstances. And the totality of the circumstances were that she was arguing with him. She was pleading with him to contact - her police officer uncle. She was walking away from him. She appeared to be, from my perspective in any event, putting her hands on him, and at that point she was put into cuffs and placed under arrest. I’m not going to terminate the refusal suspension. I believe that the officer was appropriate in determining her behavior to constitute a refusal.
(Tr. 32-33). Burnell now appeals the denial of her petition for judicial review.
Discussion
[8] Burnell- appeals the denial of her petition to reinstate her driver’s license after the trial court suspended it for refusing' a certified chemical test under Indiana’s Implied Consent Taw.
[9] A person who operates a motor vehicle impliedly consents to submit to a chemical test as a condition of operating a motor vehicle in Indiana. Ind.Code § 9-30-6-1. When a law enforcement officer has probable cause to believe a motorist has operated a vehicle while intoxicated, the officer must offer the .motorist an opportunity to submit to a chemical test. I.C. § 9-30-6-2(a). When an officer offers a motorist a chemical test, the officer must inform the motorist that a refusal will result in the suspension of his or her driving privileges. I.C. § g-SCMl-Tfa).[1] Indiana’s implied consent statutes provide the State with a mechanism necessary to obtain evidence of a driver’s intoxication in order to keep Indiana streets, roads, and highways safe by removing the threat posed by the presence of drunk drivers. Abney v. State; 821 N.E.2d 375, 379 (Ind.2005).
.[10] A trial .court’s denial of a petition for judicial review of a chemical breath test refusal is a final appealable judgment. See I.C. § 9-30-6-10(g). On review, we can only determine whether the evidence is sufficient as a matter of law to support the findings.that: (1) the arresting officer had probable cause to believe that the driver was operating a vehicle while intoxicated; and (2) the driver refused to submit to a chemical test offered by a law enforcement officer after being informed of the consequences of such refusal. Upchurch v. State, 839 N.E.2d 1218, 1220 *776 (Ind.Ct.App.2005). In doing so, we will not weigh the evidence nor judge the credibility of the witnesses, and we will consider only the evidence favorable to the trial court’s decision. Id.
[10] Here, Burnell does not challenge whether the officer had probable cause to believe that she had operated a vehicle while intoxicated. Rather, she claims that she agreed to take the test and that her subsequent conduct did not “negate her affirmative response.” (Burnell’s Br. 3). In response, the State essentially argues that Burnell’s oral response to the. implied consent advisement was equivocal and should be treated as a refusal.
[12] We have previously addressed whether a defendant’s conduct established refusal of a certified chemical test. Thacker v. State, 441 N.E.2d 708, 711 (Ind.Ct.App.1982) (finding that “recalcitrant behavior. .... which physically impedes or threatens to impede the administration of the test ... constitutes refusal”). We have also found that feigning attempts to perform a certified breath test and equivocation by requesting counsel constitute refusal. Hatch v. State, 177 Ind.App. 231, 378 N.E.2d 949 (1978); Davis v. State, 174 Ind.App. 433, 367 N.E.2d 1163 (1977). However, the issue of equivocation alone when responding to an officer’s request to take a chemical test .appears to be one of first impression. Davis is instructive on this question.
[13] In Davis, we held for the first time in Indiana that the Sixth Amendment constitutional right to counsel did not attach at the time a motorist is offered a chemical test. The decision to take a breath test and the potential license suspension for a refusal were administrative in nature, not criminal. Davis, 367 N.E.2d at 1167. Davis relied in part on'a case from New Jersey, State v. Pandoli, 109 N.J.Super. 1, 262 A.2d 41 (App.Div.1970).
[14] There, after the defendant was given the implied consent advisement, he refused to take the test. Id. at 42.' Later, he told an officer that he would take the test if he had to, but wanted to contact an attorney. Id. In interpreting New Jersey’s implied consent statute and concluding that the defendant had refused the chemical test, the court stated the following:
Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer’s request that the arrested motorist take the test constitutes a refusal to do so. The occasion is not one for debate, maneuver, or negotiation, but rather .for a simple “yes” or “no” to the officer’s request.
Id. (internal citation omitted). The question, then, is can we interpret Indiana’s Implied' Consent Law in such a manner that any answer short of “yes” or “no” to an officer’s request constitutes a refusal.
[15] The cardinal rule in statutory construction is to determine and give effect to the true intent of the legislature. Jacks v. State, 853 N.E.2d 520, 522 (Ind.Ct.App.2006). To do this, we interpret the statute according to the ordinary and plain meaning of the language used, absent a clearly manifested purpose to do otherwise. Id. Further, we presume that the legislature intended logical application of the language in the statute, so as to avoid unjust-or absurd results. State v. Evans, 810 N.E.2d 335, 337 (Ind.2004) (quoting Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind.2002)). Moreover, when interpreting the words of a statute, we must construe them with due regard for all other sections *777 of the act and with regard for the legislative intent to carry ’out the spirit and purpose of the act. N.D.F. v. State, 775 N.E.2d 1085, 1088 (Ind.2002).
 [16] The implied consent1 statutes are aimed at providing law enforcement officers with implied consent for performing chemical tests on drivers who are either thought to be intoxicated or who have been involved in accidents involving fatalities or serious bodily injuries. Brown v. State, 744 N.E.2d 989, 993 (Ind.Ct.App.2001). “A person who operates a vehicle impliedly consents to submit to [a] chemical test ... as a condition of operating a vehicle in Indiana.” I.C. § 9-30-6-1.
[17] Furthermore, Indiana Code § 9-30-6-2 provides the following:
(a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9-30-5 [operating a vehicle while intoxicated] '... shall offer the person the opportunity to submit to a chemical test.'
* * ⅛ ⅜ *
(c) A test administered under this chapter must be within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9-30-5 or a violation under IC 9-30-15.
(d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent law.
[18] (emphases added). The language of our implied consent law is clear. Once a person operates a vehicle in Indiana, they have impliedly or indirectly consented to take a properly offered chemical test. In addition, a motorist must submit to every chemical test offered to be in compliance with the statute. Finally, when an officer advises a motorist of the consequences of refusing a chemical test, the warning must be in “absolute terms.” State v. Ray, 886 N.E.2d 43, 47-48 (Ind.Ct.App.2008) (citing State v. Huber, 540 N.E.2d 140 (Ind.Ct. App.1989), trans. denied,) (implied consent statute mandated an -advisement “that refusal will result in suspension”).
[19] Just as an officer’s implied consent advisement must unequivocally inform a motorist that his or her refusal will result in suspension of their driving privileges, a motorist’s response must also be unequivocal to the proper offer of a chemical test. The statute as written leaves a motorist no room for negotiation or dé-bate. Allowing any equivocal response from k motorist when confronted with a properly offered chemical test does not comport with the mandatory language of the statute or its purpose. Accordingly, we hold that anything short of an unqualified, unequivocal assent to &' properly offered chemical 'test constitutes a refusal.
[20] Turning to Burnell’s response to -Officer Kinyon’s implied consent advisement, we note .that she first answered that she did not know if she would take the test and asked the officer to call her uncle. When Officer Kinyon told her that he needed a yes or no answer, Burnell responded that if she refused she was going- to jail ‘[so yeah, I guess; I gotta take it.” (App. 10 at 20:49:22). She then began to walk away, and Officer Kinyon grabbed her arm and, told her not to move. . Burnell moved out of his grasp, told the officer not to touch her, and moved away again. Officers then placed her in handcuffs.
[21] Based upon' this evidence^ the trial court found that Burnell’s answers and conduct did not equate to an “answer indicative of one meaning” and concluded that she had refused the chemical test. (Tr. 32-33). Burnell’s claim that she agreed to the test-when she said, “yeah I *778 guess I gotta take it” is a request that we reweigh the evidence, which we will not do. See Upchurch, 839 N.E.2d at 1220. Accordingly, we affirm the trial court’s order upholding her license suspension under Indiana’s Implied Consent Law.
Affirmed.
CRONE, J., concurs in result with opinion.
BROWN, J., dissents with opinion.