

**FILED**
Aug 23 2016, 9:19 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Russell B. Cate
Campbell Kyle Proffitt LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 29S02-1512-CR-707

KRISTY BURNELL,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hamilton Superior Court #6, No. 29D06-1407-F6-5545
The Honorable Gail Z. Burdach, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 29A02-1412-CR-849

August 23, 2016

**Rucker, Justice.**

The driving privileges of a motorist were administratively suspended on grounds the motorist refused to take a chemical test. Upon judicial review the trial court declined to set aside the suspension. We affirm the trial court's judgment.

**Background**

Our courts have "long recognized the toll that drunk driving has taken on the general public and the state's interest in preventing accidents caused by drivers who are intoxicated." Smith v. Cincinnati Ins. Co., 790 N.E.2d 460, 461 (Ind. 2003) (citing cases); see also South Dakota v. Neville, 459 U.S. 553, 558 (1983) (noting "[t]he situation . . . of the drunk driver [ ] occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy."). To combat the serious harm inflicted by drunk drivers, all fifty States and the District of Columbia have enacted laws prohibiting motorists from driving with a blood alcohol concentration exceeding a specific level. Determining whether a driver's blood alcohol concentration exceeds the legal limit requires a test, "and many drivers stopped on suspicion of drunk driving would not submit to testing if given the option. So every State also has long had what are termed 'implied consent laws.'" Birchfield v. North Dakota, 136 S. Ct. 2160, 2166 (2016).

Indiana's implied consent law provides: "A person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." Ind. Code § 9-30-6-1. In turn, when a law enforcement officer has probable cause to believe a motorist has operated a vehicle while intoxicated, the officer must offer the motorist an opportunity to submit to a chemical test. I.C. § 9-30-6-2(a). "If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges." I.C. § 9-30-6-7(a). The question presented in this case is what constitutes a "refusal" to submit to a chemical test so as to warrant the revocation of the license of a person arrested for driving under the influence of alcohol.

2

**Facts and Procedural History**

Arising out of facts recounted below, Officer David Kinyon of the Carmel Police Department tendered a probable cause affidavit to the Hamilton County prosecutor's office declaring that Kristy Burnell failed to submit to a chemical test. <u>See</u> I.C. § 9-30-6-7.[1] The affidavit triggered proceedings that ultimately resulted in the administrative suspension of Burnell's driver's license. <u>See</u> I.C. § 9-30-6-9 through 10. Burnell then sought a hearing challenging her license suspension.[2] The facts are as follows.

On July 3, 2014 Officer Kinyon observed Burnell driving her car on Carmel Drive in Hamilton County. Burnell ran a stop sign and made an improper turn. Initiating a traffic stop, Officer Kinyon noted an odor of alcoholic beverage coming from Burnell and also observed that her speech was slurred, her eyes were bloodshot and her balance unsteady. Officer Kinyon then administered to Burnell three field sobriety tests, all of which she failed. After completing the tests, the officer advised Burnell:

> I do have probable cause to believe that you have operated a vehicle while intoxicated and I must now offer you the opportunity to take a chemical test, and inform you a refusal to take a chemical test will result in a suspension of your driving privileges for one year. If [you] have at least one previous conviction for operating while intoxicated, your refusal to submit to a chemical test will result in a suspension of your driving privileges for two years. Will you now take that chemical test?

Tr. at 22-23. In response to Officer Kinyon's question Burnell repeatedly asked to speak to her uncle—a police officer—and also informed Officer Kinyon that she had been previously convicted

---

[1] The statute provides in pertinent part: "If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges . . . the arresting officer shall . . . [s]ubmit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred." I.C. § 9-30-6-7(b)(2).

[2] The statutes provide in pertinent part: "If the affidavit under section 8(b) [referencing section 7(b)(2)] of this chapter states that a person refused to submit to a chemical test, the bureau [of Motor Vehicles] shall suspend the driving privileges of the person: (1) for: (A) one (1) year; or (B) if the person has at least one (1) previous conviction for operating while intoxicated, two (2) years . . . ." I.C. § 9-30-6-9(b); "A person . . . whose driving privileges have been suspended under section 9 of this chapter is entitled to a prompt judicial hearing." I.C. § 9-30-6-10(a).

in the State of Florida for the offense of operating while intoxicated. Captured on Officer Kinyon's in-car video system and played before the trial court, the following exchange occurred:

> OFFICER KINYON: Okay. So, I need an answer. Are you willing to take that test or not? Okay?
>
> MS. BURNELL: Well, I mean if I take it, I'm going to jail.
>
> OFFICER KINYON: I'm not going to argue with you. But I need a yes or no answer. You have the right to refuse, but I need an answer as to whether you'll take that test or not. And that's something I'm not --
>
> MS. BURNELL: Well if I refuse, I'm going to jail either way. So, yeah, I guess I gotta can take it.

Tr. at 24. As Burnell said, "yeah, I guess I gotta can take it," Tr. at 24, she stepped away from the officer and he grabbed her by the arm. Tr. at 12, 27. Burnell asked not to be touched. Once Officer Kinyon released her, she began moving away from him again. At this point another officer stepped forward and assisted Office Kenyon in arresting Burnell. In the process the following exchange occurred:

> OFFICER KINYON: You do not walk away from me twice. You understand that?
>
> MS. BURNELL: I was just -- Sir, I was just -- Sir, I was just (indiscernible) away. Are you kidding me? I was just walking.
>
> OFFICER KINYON: I'm going to take your refusal to answer my question as a refusal by refusing to answer. Okay?
>
> MS. BURNELL: Sir, sir, sir, please don't cuff me.
>
> OFFICER KINYON: You are under arrest.
>
> MS. BURNELL: I -- I was walking away.
>
> OFFICER KINYON: Exact -- That's exactly what you were doing.
>
> MS. BURNELL: I wasn't walking away, I was just -- [.]

Tr. at 25. Following the hearing, and after listening to defense counsel's closing arguments the trial court made the following observations:

4

Well, the words as you relate them . . . are very neutral, very passive, very non-argumentative. The transcript that you offered to let me read instead of viewing the video would have left that impression in my mind that what was happening out there was very neutral, very passive, very ordinary. That's not what I saw in the video, however. She did say the words, "I gotta take it" and she did walk away from him at the same time. It looked to me like she put his -- put her hands on him. It was at that point that the other officer stepped in and put cuffs on her. No, she wasn't jumping up and down. No, she wasn't belligerent, but she wouldn't stop interrupting him. She kept referring to her uncle the police officer, her best friend. She obviously wanted to argue with him, and was arguing with him. I consider her response to be very equivocal, certainly not something that was indicative of only one meaning. . . .

She was pleading with [the officer] to contact her police officer uncle. She was walking away from him. She appeared to be, from my perspective in any event, putting her hands on him, and at that point she was put into cuffs and placed under arrest. I'm not going to terminate the refusal suspension. I believe that the officer was appropriate in determining her behavior to constitute a refusal.

Tr. at 32-33.

Burnell appealed and in a divided opinion, with each judge writing separately, the Court of Appeals affirmed the judgment of the trial court. In the lead opinion Judge Pyle phrased the question as "can we interpret Indiana's Implied Consent Law in such a manner that any answer short of 'yes' or 'no' to an officer's request constitutes a refusal." Burnell v. State, 44 N.E.3d 771, 776 (Ind. Ct. App. 2015). In answer to the question Judge Pyle declared, "we hold that anything short of an unqualified, unequivocal assent to a properly offered chemical test constitutes a refusal." Id. at 777. Concurring in result Judge Crone opined that the court need not go as far to "categorically hold that 'anything short of an unqualified, unequivocal assent to a properly offered chemical test constitutes a refusal.'" Id. at 778. Judge Brown dissented, concluding "the evidence presented did not establish as a matter of law that [Burnell] refused to submit to the chemical test under Ind. Code § 9-30-6-9(b)." Id. at 780. Having previously granted transfer we also affirm the trial court's judgment but on grounds different from those expressed in the lead opinion.

5

**Standard of Review**

The trial court's denial of a petitioner's petition for judicial review is a final appealable judgment in the manner of a civil action. See I.C. § 9-30-6-10(g). And as the party petitioning for review Burnell bore the burden of proof by a preponderance of the evidence. See I.C. § 9-30-6-10(f).[3] A judgment entered against a party bearing the burden of proof is a negative judgment. Smith v. Dermatology Assocs. of Fort Wayne, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal from a negative judgment, this Court will reverse the trial court only if the judgment is contrary to law. Comm'r, Ind. Dep't. of Envtl. Mgmt. v. RLG, Inc., 755 N.E.2d 556, 559 (Ind. 2001). A judgment is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. Infinity Prods., Inc. v. Quandt, 810 N.E.2d 1028, 1032 (Ind. 2004) (citation omitted). In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the prevailing party, together with all reasonable inferences therefrom. Smith, 977 N.E.2d at 4. We neither reweigh the evidence nor judge the credibility of witnesses. See Brand v. Monumental Life Ins. Co., 417 N.E.2d 297, 298 (Ind. 1981). Further, "[w]hen appealing from a negative judgment, a party has a heavy burden to establish to the satisfaction of the reviewing court that there was no basis in fact for the judgment rendered." Ind. & Mich. Elec. Co. v. Schnuck, 298 N.E.2d 436, 440 (Ind. 1973).


**Discussion**

Burnell correctly asserts that she never verbally refused to take a chemical test. And noting that at one point she told the officer, "yeah, I guess I gotta can take it," Burnell also contends her "conduct did not constitute refusal to submit to the chemical test." Br. of Appellant at 6. To support this contention Burnell cites authority in which the facts revealed the defendant's behavior established a refusal and argues the facts in this case are distinguishable. See, e.g., Reynolds v. State, 698 N.E.2d 390, 395 (Ind. Ct. App. 1998) (finding a refusal to submit to a chemical breath

---

[3] The issues at the administrative hearing are limited to "(1) [w]hether the arresting law enforcement officer had probable cause to believe that the person was operating a vehicle in violation of IC 9-30-5" and "(2) [w]hether the person refused to submit to a chemical test offered by a law enforcement officer." I.C. § 9-30-6-10(c). Confining her claim to the question of refusal, Burnell did not challenge the existence of probable cause. See Tr. at 6.

test where defendant failed on four different occasions to give an adequate breath sample), trans. denied; Thacker v. State, 441 N.E.2d 708, 709 (Ind. Ct. App. 1982) (noting that although defendant verbally consented to submit to a chemical test, his conduct, which included becoming "violent, kicking the officers and resisting their attempts to remove him from the patrol car," constituted a refusal); Jaremczuk v. State, 380 N.E.2d 615, 618 (Ind. Ct. App. 1978) (finding a refusal to submit to a breathalyzer test where defendant verbally agreed to take the test but when he put his mouth onto the mouthpiece he "puffed out his cheeks pretending to blow, but no breath entered the machine").

We acknowledge Burnell's behavior here was not as defiant as that portrayed in the foregoing authority. But the tie binding these cases together is that even without saying "no" or "I refuse" a refusal nonetheless may be established on the basis of conduct alone if the motorist has clearly been asked to take a test. In short a physical failure to cooperate can amount to a refusal. See Mayo v. Moore, 527 N.W.2d 257, 260-61 (N.D. 1995) (finding a refusal where motorist did not respond to an officer's inquiry as to whether she would consent to take the test).

At the same time, we do not embrace the proposition that "anything short of an unqualified, unequivocal assent to a properly offered chemical test constitutes a refusal." Burnell, 44 N.E.3d at 777. This approach could be problematic if, say for example, the motorist does not speak or understand the language in which the test was offered; or if the motorist has a non-alcohol related auditory impairment such that she does not hear the offer. Instead we think it more appropriate to adopt an approach that takes into consideration the facts and circumstances of each case. Hence, we hold a refusal to submit to a chemical test occurs when the conduct of the motorist is such that a reasonable person in the officer's position would be justified in believing the motorist was capable of refusal and manifested an unwillingness to submit to the test. See Winter v. Peterson, 305 N.W.2d 803, 806 (Neb. 1981); accord Campbell v. Super. Ct. In & For Maricopa Cty., 479 P.2d 685, 696 (Ariz. 1971) (en banc).

The record here shows Burnell clearly heard and understood the officer's offer of the opportunity to take a chemical test. She thus was capable of refusal. And although first declaring "yeah, I guess I gotta can take it," Burnell nonetheless stepped away from the officer twice,

justifying a reasonable person in the officer's position to believe that Burnell manifested an unwillingness to submit to the test. We are not unmindful the evidence in this case presents conflicting inferences. But in appealing from a negative judgment Burnell has the burden of demonstrating the evidence leads to but one conclusion and the trial court reached an opposite conclusion. She has failed to carry this burden.

## Conclusion

We affirm the judgment of the trial court.

Rush, C.J., and David, Massa and Slaughter, JJ., concur.