## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 05 2017, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James R. Fisher
Debra H. Miller
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Daniel G. McNamara
David E. Bailey
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

American Heritage Banco, Inc.,

*Appellant-Plaintiff,*

v.

John Pichon, Jr.,

*Appellee-Defendant.*

May 5, 2017

Court of Appeals Case No.
17A05-1606-PL-1306

Appeal from the Dekalb Superior Court.
The Honorable Monte L. Brown, Judge.
Cause No. 17D02-1412-PL-76

**Sharpnack, Senior Judge**

## Statement of the Case

[1]  American Heritage Banco ("AHB"), as successor to the First National Bank of Fremont ("FNBF"), appeals from a negative judgment after the trial court concluded that AHB was not entitled to a judgment against John Pichon, Jr. for

an alleged amount due on a $650,000 promissory note (the "$650K note").[1]
We affirm.

# Issue

Although AHB advances several issues on appeal, the dispositive issue is: were the trial court's findings that AHB failed to meet its burden to prove that any balance was due from Pichon on the $650K note and judgment for Pichon on AHB's claim against him on the note was contrary to law.

# Facts and Procedural History

To put the issues of this appeal in context, we summarize the pertinent history of this case, drawing from this Court's earlier opinion in *Pichon v. American Heritage Banco, Inc., et al.*, 983 N.E.2d 589 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*.[2]

On December 28, 2000, Pichon executed a promissory note, borrowing $737,000 (the "$737K note") from FNBF for the purchase of Growth Parkway Property ("GPP") from MacNeachdainn Corporation. MacNeachdainn Corporation was owned and controlled by George McNaughton ("George"). George's brother, Earl McNaughton ("Earl"), was the president, chairman of

---

[1] Although referred to as the $650K note, it is undisputed that the principal amount of the loan as reflected on the note was $650,025.00.

[2] We have addressed issues related to additional parties to this ongoing dispute in *American Heritage Banco, Inc., et al. v. McNaughton*, 970 N.E.2d 1110 (Ind. Ct. App. 2008). Although Pichon was named in that appeal, the issues decided did not pertain to him, and are not pertinent to disposition of this appeal.

the board of directors, and chief executive officer of FNBF. FNBF was a wholly owned subsidiary of AHB from 1995 to 2005. Earl is the majority shareholder in AHB, a closely held corporation. The $737K note was secured by a mortgage on GPP and was for a term of one year.

[5] Thomas Christlieb ("Christlieb") was Pichon's loan officer at FNBF. In November 2002, Earl directed Christlieb to ask Pichon to borrow $650,000 from FNBF and to allow the proceeds to be disbursed to Earl. Pichon agreed, and on November 15, 2002, Pichon executed the promissory note for $650,025. Plaintiff's Ex. 34; Plaintiff's Ex. 5; Defendant's Ex. C1; Exhibit Vol. pp. 75-78. This loan was unsecured and was for a term of ninety days with a final payoff amount of $660,994.17 due on February 13, 2003. Three original notes were executed with respect to the same loan. Pichon was aware that the money was to be disbursed to Earl.

[6] Ted Walter, a former employee of FNBF and AHB, was the designated Indiana Trial Rule 30(B)(6) representative of AHB in this litigation. Walter agreed to testify for AHB in this action and litigation against others in consideration of AHB's decision to no longer pursue litigation against him.

[7] During his deposition, he identified Exhibit E, which was a check for $650,000 issued to Pichon on November 15, 2002, with a memo notation that it was for "loan proceeds." Ex. Vol. p. 80. The exhibit also contains a cashier's check from FNBF made payable to FNBF on November 15, 2002 in the amount of $150,000. *Id.* In addition, Walter identified Exhibit F, which showed three

checks issued by FNBF and made payable to FNBF. *Id.* at 81. The checks are sequentially numbered and, in the aggregate, reflect a payment of $500,000.[3] Therefore, the total amount paid to FNBF as reflected by Exhibits E and F is $650,000.

[8] Exhibit W contained selected deposition testimony of Ted Walter referred to during trial on remand. In that testimony, Walter stated that the proceeds of the $650K loan were not distributed to Pichon. *Id.* at 106-107. He also testified that the disbursement checks were payable to FNBF. *Id.* at 107. When testifying about the installment payment ticket for the $650K note, Walter agreed that the document appeared to show that the $650K loan had been paid in full with interest in the amount of $653,437.63. Walter was asked to examine Exhibit 15, which was the $650K loan document. He confirmed that it was marked paid as of December 23, 2002, the same date the installment payment ticket showed a payment of $653,437.63.

[9] Walter also was questioned about Exhibit 16, which was the loan history for the $650K loan. He agreed that the handwriting on the document showed a "P (slash) O." *Id.* at 110. He testified that the notation could mean that the loan was paid off. The exhibit reflected that the next day, a change was made to the loan history to indicate a payment of $592,000 with a code reflecting a

[3] Two of the three checks are dated November 15, 2002. The last check is dated October 15, 2002, which can be interpreted to be a scrivener's error or the intentional backdating of the check. Either way, the date was manually entered on each of the checks.

reduction in the balance or, in other words, a loan payment. The loan history showed that the remainder of the balance, or $58,000, was paid on May 20, 2003. In other words, the loan had been reinstated with a balance due, which was paid in full later.

[10] Walter testified that the bank employee who processed the installment payment ticket had to write down the specific loan number and look up that note's history to determine the amount required to pay off the $650K note. Another bank employee stamped the note as paid. Yet another bank employee manually logged the payment on the electronic record at the bank.

[11] In December 2002, Pichon sold GPP for $729,000 and FNBF, not Pichon, received the proceeds. Christlieb executed a mortgage release indicating that the $737K note had been satisfied. FNBF's computer records, on the other hand, continued to show an unpaid balance due on that note. On the same day in December 2002, when FNBF received the proceeds from the sale of GPP, FNBF's computer showed that the $650K note was fully paid, as indicated above.

[12] In 2003, Earl paid funds to FNBF which were credited toward the alleged balance due on the $737K note, reducing the purportedly unpaid balance to $575,000 ("$575K balance"). No further principal payments were made on that note, and, as of January 6, 2004, the loan record reflected a zero balance. In 2005, however, FNBF's computer records were adjusted to show a remaining,

unpaid $575K balance on that note. In December 2004, Pichon signed an auditor's letter acknowledging the $575K balance on the $737K note.

[13] AHB filed a complaint against Pichon. The complaint, after amendments, alleged in relevant part that Pichon had not paid off either the $737K note or the $650K note. Pichon filed a counterclaim alleging fraud and conversion.

[14] The trial court's pre-trial order set forth the numerous issues to be decided on AHB's claims against Pichon, which are pertinent to this appeal only as follows: *whether there was an unpaid balance on the $650K note and, if so, how much*. *Pichon*, 983 N.E.2d at 592 (emphasis added). The pre-trial order stated Pichon's issues presented for trial were his answers, affirmative defenses, and counterclaims. *Id*. at 593.

[15] After a trial on these claims, the court issued findings of fact and conclusions thereon. The trial court's findings can be summarized in pertinent part as follows: (1) after GPP was sold for $729K, no part of the sale proceeds was applied toward the $737K note nor were the proceeds distributed to Pichon; (2) instead, the proceeds were used to pay down the $650K note, with the remainder being paid to George; (3) Earl requested that Christlieb ask Pichon to execute the note for $650K, with the proceeds being diverted to Earl; (4) Pichon executed the note at Christlieb's request and received no consideration for doing so; (5) Pichon was unaware that the proceeds from the sale of GPP were being used to pay down the $650K note instead of the $737K note; and, (6) as

of the end of 2002, the $737K note had an unpaid balance of $575K. *Id.* at 594-96.

[16] After considering requests for interest, fees, and damages, and after considering cross-motions to correct error, the trial court concluded that AHB was entitled to a judgment against Pichon in the amount of $1,189,105.13, plus costs and interest. *Id.* at 596-97. This amount represented Pichon's liability on the $650K note, plus $389,105.13 in pre-judgment interest, and $150,000 in attorney fees. *Id.* at 597 n.3. Pichon prevailed on the issue of his liability on the $737K note, a decision from which AHB did not appeal.

[17] Pichon, however, appealed the trial court's judgment, contending that the trial court abused its discretion by excluding from evidence his exhibit, which contained the same evidence included in AHB's exhibit book, submitted prior to trial. Pichon's exhibit showed one of the three original $650K notes he executed, which was stamped paid. AHB argued that it was inadmissible because Pichon had not asserted the affirmative defense of payment under Indiana Trial Rule 8(C), and that he had not asserted that defense in his statement of issues for the pre-trial order.

[18] A panel of this Court concluded that exclusion of the exhibit from evidence was reversible error. *Id.* at 588-89. We held that the issue whether there was an unpaid balance on the $650K note was listed in the pre-trial order, AHB had the burden of proof on the issue, and exclusion of the exhibit denied Pichon the opportunity to present the best evidence to rebut AHB's evidence. *Id.* We

expressly limited the issue on remand and retrial to Pichon's indebtedness, if any, on the $650K note.

[19] At the trial on remand, Carol Newbauer, who had worked at FNBF for thirty-eight years before retiring, testified on behalf of AHB, confirming Walter's deposition testimony.[4] She identified Plaintiff's Exhibit 3 as a loan history payoff record for the $650K loan to Pichon. While explaining the various codes that were displayed on Exhibit 3, she stated that as of December 23, 2002, the loan record showed that there was a payment of principal and interest on that loan in the amount of $653,437.63. She testified that after that payment, the loan amount was taken to zero, and the exhibit was documentation of a paid note.

[20] On December 24, 2002, however, the report reflected a status change, using a three-digit code, indicating that the loan was active again, with a principal advance of $650,000. That same day, a two-digit code was used to reflect a principal reduction.[5] After that payment, the balance on the $650K note was $58,000. There was another status change made showing that the remainder of the balance, or $58,000, was paid on May 20, 2003.

---

[4] Walter also testified at the trial on remand.

[5] The three-digit codes were automatically entered by the Jack Henry system used by the bank. Tr. p. 26. Two-digit codes were manually entered. *Id.*

[21] At the conclusion of the bench trial on remand, the trial court found that the evidence "unequivocally established that at all times relevant to the date said $650K note was executed and for a number of months following said date, officers of FNBF manipulated and falsified records to conceal its own wrong and/or fraudulent activities." Appellant's App. Vol. II, p. 16.

[22] The court additionally found that after July 2005, when AHB, FNBF, and Farmers State Bank ("FSB") entered into a purchase and assumption agreement, all notes with balances were transferred to FSB. Evidence presented at trial on remand showed that the $650K note was not transferred to FSB. Per the agreement, the only notes to remain with FNBF were those expressly excluded or notes fully paid. The $650K note was not listed as an excluded loan.[6] The trial court found that the failure to deliver the $650K note to FSB constituted a representation that the note did not have an unpaid balance.

[23] The evidence on remand further showed that on February 13, 2003, the $650K note came due. The trial court found that at no time after that date did anyone at AHB: (1) send any communication indicating that Pichon had failed to make a payment on the note or that it was delinquent; (2) submit any bank statements or other monthly statements about the note; or, (3) submit evidence that the loan was ever listed as being delinquent or in default. The trial court also found there was no evidence that Pichon executed an extension of the

---

[6] Pichon's $737K note was listed as an excluded loan, however.

$650K note. Additionally, there was no evidence that AHB demanded payment from Pichon on the $650K note prior to the date AHB filed its third amended complaint against him.

[24] For much of the time during which this litigation was pending, FNBF had written records of all deposits and checks pertaining to the $650K note. After the purchase and assumption agreement was executed, around July 2005, AHB maintained no electronic records associated with the $650K note. Around July 2013, after this Court's decision remanding the matter regarding the $650K note and rehearing was denied, AHB destroyed most of the FNBF records not delivered to FSB, which would have included, if any existed, records regarding the $650K note. Pichon was not notified of AHB's intent to destroy bank records.

[25] The trial court found, however, that no evidence had been introduced to affirmatively establish that AHB had destroyed records pertinent to payment of the $650K note. Nonetheless, the trial court concluded that any uncertainty about the destroyed records with respect to the $650K note should be resolved against AHB given the evidence of intentional falsification of records to conceal the fraudulent or wrongful activities of FNBF's officers and directors.

[26] In reaching its decision, the trial court's order, issued on May 9, 2016, contains just over seventy findings of fact and conclusions thereon. With respect to the order, on appeal, AHB challenges paragraphs thirty through thirty-four. Appellant's App. Vol. II, pp. 19-20. Those paragraphs read as follows:

30.    That as the Court of Appeals stated in its Opinion of January 15, 2013, it is undisputed that the loan proceeds from said 650K Note were paid directly to FNBF, and not Pichon, and that FNBF had no expectation that Pichon would make payments on said Note.

31.    That simultaneous with the 650K Note executed by Pichon, Pichon purchased and delivered four checks to FNBF totaling 650K.

32.    That the evidence unequivocally established that the foregoing referenced cashier's checks totaling 650K were generated from the 650K Note.

33.    That while it is not the only conclusion that could be reached, a delivery of the four checks to FNBF totaling 650K is consistent with a loan in that amount from Pichon to FNBF especially given that manipulation and falsification of bank records by FNBF officers and directors.

34.    That the Court concludes that the four cashier's checks totaling 650K delivered from Pichon to FNBF constituted either a repayment in full of the 650K Note from FNBF to Pichon or in the alternative, a loan from Pichon to FNBF in that amount.

*Id.*

# Discussion and Decision

[27]    AHB bore the burden of proving that Pichon owed any amount due on the $650K loan.  The trial court concluded that AHB had not met that burden.  When a judgment is entered against a party bearing the burden of proof, the party appeals from a negative judgment.  *Burnell v. State*, 56 N.E.3d 1146, 1149-50 (Ind. 2016).  On appeal from a negative judgment, this Court will reverse the trial court only if the judgment is contrary to law.  *Id.* at 1150.  If the evidence leads to but one conclusion and the trial court reached an opposite conclusion, a judgment is contrary to law.  *Id.*  In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most

favorable to the prevailing party, together with all reasonable inferences therefrom. *Id*. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Further, when a party appeals from a negative judgment, that party has a heavy burden to establish to the reviewing court that there was no basis in fact for the judgment rendered. *Id*.

[28] Here, FNBF's records and the testimony of Walter and Newbauer, witnesses for AHB, show that Pichon executed the $650K note at Christlieb's request. On the same date as the $650K note was executed, four cashier's checks totaling $650,000 were made payable to and received by FNBF. Walter testified that the proceeds of the $650K loan were not distributed to Pichon. He also testified that the disbursement checks were payable to FNBF. When testifying about the installment payment ticket for the $650K note, Walter agreed that the document appeared to show that the $650K loan had been paid in full with interest in the amount of $653,437.63 as of December 23, 2002, the same date the installment payment ticket showed a payment of $653,437.63.

[29] Walter agreed that the handwriting on the loan history document showed a "P (slash) O" that could mean that the loan was paid off. The exhibit reflected that the next day, a change was made to the loan history to indicate a payment of $592,000 with a code reflecting a reduction in the balance or, in other words, a loan payment. The loan history showed that the remainder of the balance, or $58,000, was paid on May 20, 2003. In other words, the loan had been reinstated with a balance due, which was paid in full later. This evidence leads to the conclusion that FNBF's own records reflected that the $650K note had

been paid in full twice. Newbauer's testimony supported and was consistent with Walter's testimony.

[30] Although AHB continues to advance its argument that the $650K note was unpaid, it has not established that the trial court's conclusion, after hearing all of the evidence, was contrary to law.

[31] AHB also contends that the trial court's admission of Exhibits E and F runs afoul of the doctrine of the law of the case. More specifically, AHB contends that the trial court's decision on remand runs contrary to this Court's prior decision affirming the trial court's conclusion that the evidence showed the $650K note was executed by Pichon for Earl's benefit, not that of AHB.

[32] The doctrine of the law of the case is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts. *Cutter v. State*, 725 N.E.2d 401, 405 (Ind. 2000) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817-18, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988); *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind. 1989)). The doctrine's purpose is to promote finality and judicial economy. *Id.* The doctrine of the law of the case is applied only "to those issues actually considered and decided on appeal." 4A Kenneth M. Stroud, Indiana Practice § 12.10 (2d ed. 1990) (emphasis omitted); accord *Riggs v. Burell*, 619 N.E.2d 562, 564 (Ind. 1993) ("Questions not conclusively decided in a prior appeal do not become the law of the case."); *Egbert v. Egbert*, 235 Ind. 405, 415, 132 N.E.2d 910, 916 (1956) ("[T]he parties have the right to introduce

new evidence and establish a new state of facts; and when this is done, the decision of the [court] ceases to be the law of the case . . . .") (quoting *Alerding v. Allison*, 170 Ind. 252, 258-59, 83 N.E. 1006, 1009-10 (1908)).

[33] During the original trial on the $650K note, the trial court made findings with respect to the purpose and recipient of the proceeds in deciding Pichon's counterclaim of fraud against AHB. On appeal, we affirmed the trial court's conclusion that Pichon had not established the counterclaim. *Pichon*, 983 N.E.2d at 594, 600. Pichon was aware that the funds were to be diverted to Earl, who happened to be the president, chairman of the board of directors, and chief executive officer of FNBF, a wholly owned subsidiary of AHB from 1995 to 2005, and the majority shareholder in AHB, a closely held corporation.

[34] The issue at trial on remand, was whether there was an amount due on the $650K note, and, if so, how much. Any decision about to whom the proceeds of the note were diverted, was irrelevant to the issue of whether the note had been fully paid. FNBF's records and the testimony of AHB's witnesses established that the note had been fully satisfied, possibly two or three times. The conclusion that the funds were to be diverted to Earl after the execution of the note by Pichon, does not impact the trial court's decision on remand.

[35] Next, we turn to AHB's arguments about the trial court's findings and conclusions supporting its judgment.

[36] In reviewing findings of fact and conclusions of law, an appellate court applies "a two-tiered standard of review by first determining whether the evidence

supports the findings and then whether the findings support the judgment." *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015), (quoting *Weigel v. Weigel*, 24 N.E.3d 1007, 1010 (Ind. Ct .App. 2015), *trans. not sought*). In evaluating whether the findings support the judgment (or award), we will reverse "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind.1992)). "[T]he reviewing court may affirm the judgment on any legal theory supported by the findings." *Id.* (quoting *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998)).

[37]　The evidence shows that Christlieb asked Pichon to execute the $650K note for the benefit of Earl. Pichon did so on November 15, 2002. On that same date, four cashier's checks were issued by FNBF and were made payable to FNBF. The loan history for the $650K note showed that as of December 23, 2002, the balance of the note was zero. An installment payment ticket, specifically referring to the account number for the $650K note, showed payment of the balance due on December 23, 2002. After AHB, FNBF, and FSB entered into a purchase and assumption agreement, all notes with balances were transferred to FSB. The $650K note was not transferred, leading to the reasonable inference that there was no balance due on the note. No statements, delinquency notices, or demands were made of Pichon by FNBF or AHB.

[38]　Whether the payments received are characterized as a loan or payment in full of the $650K note, the findings support the trial court's conclusion that AHB did not meet its burden of establishing any balance due on the $650K note.

# Conclusion

[39]     In light of the foregoing, the trial court's decision is affirmed.

[40]     Affirmed.

[41]     Vaidik, C.J., and Barnes, J., concur.