

FILED

Aug 09 2019, 1:10 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-JT-281

## In the Matter of M.I., N.I.[1], N.I.[2], N.I.[3], N.I.[4], S.I. (Minor Children); Denis Koehlinger,

*Appellant (Guardian ad Litem)*

–v–

## K.H. (Mother),

*Appellee (Respondent)*

---

## A.I. (Father) and L.M. (Father),

*Appellants (Respondents)*

–v–

## Indiana Department of Child Services,

*Appellee (Petitioner)*

---

Argued: June 4, 2019 | Decided: August 9, 2019

Appeal from the Allen Superior Court,
Nos. 02D08-1710-JT-146, -147, -148, -149, -150, -151
The Honorable Daniel G. Heath, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-JT-1948

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Here, a trial court refused to terminate a mother's parental rights, concluding termination was not in the children's best interests. The court found that the children shared a strong bond with their mother, that DCS would struggle to find adoptive homes for the children, and that the mother had made progress complying with the requirements of her parent-participation plan. Yet the children's guardian ad litem appealed, insisting that the mother's parental rights should be terminated—solely because she had not yet found suitable housing for herself and her children.

We affirm the trial court. Even though the mother still lacked suitable housing, the court's findings—which are supported by ample evidence—reflect that termination would sever the children's strong family bond with a mother who was making progress, only to leave them with doubtful prospects for a permanent adoptive home. And so, the court's conclusion that DCS failed to clearly and convincingly show that termination was in the children's best interests was not contrary to law.

## Facts and Procedural History

In late 2015, K.H. (Mother) took six of her children to an Indiana Department of Child Services (DCS) office. She told the department that she couldn't care for them because of her alcohol addiction and recent homelessness. At the time, the children ranged in age from one to ten years old.

On DCS's petition, a court found the children in need of services. And it imposed on Mother a parent-participation plan with twenty-three requirements. That plan required her, in part, to maintain suitable housing and employment, attend Alcoholics Anonymous (AA) meetings, take part in counseling, enroll in home-based services, submit to random drug screens, and participate in visitations.

The children remained with Mother, and they all moved in with her aunt. During this time, Mother was working and looking for housing. But

when her aunt moved away in June 2016, Mother had not yet secured housing, so the children were placed in foster care.

Over the next several months, Mother lived in various locations. She found employment, went to AA meetings, participated in counseling, completed a parenting program, submitted to random drug screens, and attended supervised visitations with her children. Because Mother did not have a car, there were times she walked two hours each way to attend counseling, and forty minutes each way to attend visitations. Although Mother continued to look for housing, she was unsuccessful.

Then in December 2017, DCS petitioned to terminate Mother's parental rights, citing her failure to satisfactorily comply with her parent-participation plan.

The trial court held a four-day factfinding hearing, which included testimony on the bond between Mother and her children; DCS's potential struggle to find an adoptive home for the children; and Mother's progress with the parent-participation plan. The children's guardian ad litem (GAL)—who had neither met nor spoken with the children—was the only witness to opine that terminating Mother's parental rights would be in the children's best interests.

Concluding that the department failed to clearly and convincingly show that termination was in the children's best interests, the trial court denied DCS's petition to terminate Mother's parental rights.

The GAL appealed, and the Court of Appeals reversed. *M.I. v. Ind. Dep't of Child Servs.*, No. 18A-JT-1948, 2019 WL 419087, at *11–12 (Ind. Ct. App. Feb. 4, 2019). The panel reasoned that Mother's inability to "obtain suitable housing for herself and the Children" leads to a "conclu[sion] that termination of Mother's parental rights is in the best interests of the

Children." *Id.* at *11. Mother petitioned for transfer, which we granted, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).[1]

## Standard of Review

Here, the trial court concluded DCS failed to clearly and convincingly show that termination of Mother's parental rights was in the best interests of her children. The GAL—aligned with DCS—challenges this determination and thus appeals from a negative judgment. *See Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019); *see also* Ind. Code § 31-35-2-4(a) (2018).

To prevail, the GAL must show that the court's decision is contrary to law, meaning that the probative evidence and reasonable inferences point unerringly to the opposite conclusion. *See Burnell v. State*, 56 N.E.3d 1146, 1150 (Ind. 2016). On review, we consider the evidence in the light most favorable to the prevailing party, and we neither reweigh the evidence nor judge the credibility of witnesses. *Id.*; *see Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1032 (Ind. 2004).

## Discussion and Decision

Though it's been oft-stated, it bears repeating: the parent–child relationship "is one of the most valued relationships in our culture." *Neal v. Dekalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003) (internal quotation marks omitted) (quoting *Tillotson v. Clay Cty. Dep't of Family & Children*, 777 N.E.2d 741, 745 (Ind. Ct. App. 2002), *trans. denied*; *In re D.L.M.*, 725 N.E.2d 981, 983 (Ind. Ct. App. 2000)). Indiana law thus sets a high bar to sever that relationship—requiring DCS to prove four elements by clear and convincing evidence. I.C. § 31-35-2-4(b)(2); *In re Bi.B.*, 69 N.E.3d 464, 465, 467 (Ind. 2017). One of those elements, and our

---

[1] We summarily affirm the part of the Court of Appeals opinion that affirms the trial court's termination of parental rights of fathers A.I. and L.M. *See* App. R. 58(A)(2). Neither father petitioned for transfer.

focus today, is whether termination is in the children's best interests. I.C. §
31-35-2-4(b)(2)(C).

Despite Mother's ongoing inability to secure suitable housing, the trial
court couldn't yet conclude that terminating her parental rights would be
in her children's best interests. The GAL argues that this best-interests
determination is contrary to law. He maintains that Mother's failure to
find suitable housing for over two years leads to a "singular conclusion"
that her parental rights must be terminated. We disagree.

When determining what is in children's best interests, trial courts may
consider a **variety** of factors. *See In re K.T.K.*, 989 N.E.2d 1225, 1234–35
(Ind. 2013). The trial court here did just that. In reaching its best-interests
conclusion, the court found that Mother and her children shared a
"strong, loving bond"; that DCS would face challenges finding adoptive
homes for the children; and that Mother had made progress complying
with her parent-participation plan. As explained below, ample evidence in
the record supports those findings, which in turn support the trial court's
best-interests conclusion.

We turn first to the evidence supporting the trial court's finding that
Mother and her children shared a "strong, loving bond." On this point,
the court heard testimony from two witnesses with significant access to
the children. Denise Jensen, the therapist overseeing visitations, explained
that Mother and the children are "very enthusiastic" when seeing each
other and are "always really glad to be together." Likewise, the foster
parent to three of the children noted that the children talk about Mother
"[a]ll the time" when they are not with her; that Mother and the children
display genuine affection; and that "when they see her[,] they holler
mommy and go to her."

Similarly, the evidence supports the trial court's finding that DCS may
"struggle to find adoptive parents" for the children. At the time of the
hearing, the six children ranged in age from four to thirteen years old and
were split up among different foster homes. Jensen explained that each
child has "pretty challenging behaviors individually," and when they get
together, "sometimes those behaviors increase." Given their ages and
behavior issues, the current DCS case manager admitted that if adopted,

the children would likely remain apart. She acknowledged that finding a home for even three or four of them would be challenging.

Finally, we address the evidence supporting the trial court's findings on Mother's progress complying with her parent-participation plan. At the hearing, Mother testified that she had been unemployed for a total of only six weeks since the beginning of the case and currently had a full-time job. Additionally, Mother confirmed that she was fully sober as a result of engaging in counseling and regularly attending AA meetings. She further explained that if she were reunited with the children, she would be able to provide them with food and healthcare. And Jensen testified that Mother had shown significant improvement with her parenting skills.

To be sure, Mother has not consistently complied with, nor has she completed, all twenty-three requirements in her parent-participation plan—including the requirement that she secure suitable housing for herself and her children. But as the trial court aptly observed, full compliance with the plan "is difficult to accomplish, especially for someone without personal transportation." After all, on multiple occasions, Mother went to counseling and visitations by foot; and DCS case managers conceded that the plan requirements were cumbersome, often requiring Mother to be in three or four different places in a given week, while also keeping a job, attending visitations, and looking for housing. But despite any challenges Mother has faced, the evidence shows that she has complied or made progress with most of the plan's requirements.

In sum, the trial court recognized Mother's struggles with finding suitable housing, but it properly looked to other factors—supported by the evidence—in concluding that DCS failed to meet its burden to show that terminating Mother's parental rights would be in her children's best interests. Given the evidence above that supports the trial court's decision, that decision is not contrary to law.

# Conclusion

Because the GAL has failed to show that the trial court's decision is contrary to law, we affirm.

David, Massa, Slaughter, and Goff, JJ., concur.


ATTORNEY FOR APPELLANT DENIS KOEHLINGER
Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE K.H.
Thomas C. Allen
Fort Wayne, Indiana

ATTORNEY FOR APPELLANTS A.I. AND L.M.
Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE INDIANA DEPARTMENT OF CHILD SERVICES
Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana