ATTORNEYS FOR APPELLANT
Robert D. King, Jr.
David R. Thompson
The Law Office of Robert D. King, Jr., P.C.
Indianapolis, IN

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, IN



FILED
May 31 2017, 3:47 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

---

No. 49S05-1705-CR-346

KEYAUNNA HURLEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

---

Appeal from the Marion Superior Court, No. 49G12-1510-CM-37573
The Honorable David J. Certo, Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1601-CR-108

---

**May 31, 2017**

**Slaughter, Justice.**

A state-police trooper stopped Defendant for a traffic violation. During the stop, the trooper suspected Defendant was intoxicated, so he conducted several field sobriety tests, which Defendant failed. At the trooper's request, Defendant agreed to take a chemical breath test at a nearby police station. During the first test, Defendant did not blow hard enough, prompting the machine to print an "insufficient sample" warning. The trooper concluded Defendant had refused to take the test, resulting in the suspension of her driving privileges. On judicial review, Defendant challenged the conclusion that she refused the test, claiming the trooper did not follow the required

procedures when administering it. She alleges these procedures, promulgated by the Indiana State Department of Toxicology, required the trooper to offer her a second test. Concluding the procedures required a second test on this record, we grant transfer and reverse.

**Factual and Procedural History**

In October 2015, Indiana State Police Trooper Joshua Graves stopped Keyaunna Hurley in Indianapolis for a traffic violation. Suspecting Hurley was intoxicated, Trooper Graves conducted several field sobriety tests, which she failed. The trooper then asked Hurley to submit to a chemical breath test at a nearby police station, and she agreed.

A chemical breath test requires the subject to blow one to three times into the Intox EC/IR®II. This device, which contains an "electrochemical sensor (EC)" and employs "infrared sensor (IR) technology", measures a person's blood-alcohol content. Before he administers a test, the trooper generally explains to his subjects they must blow as hard as they can, for as long as they can, to ensure an accurate test result; otherwise, they will be charged with a refusal. The trooper also generally demonstrates the volume of air a subject needs to expel to register a successful reading on the machine, although the record is unclear whether he did so with Hurley. Hurley blew three times but, in the trooper's words, she "did not blow a substantial [enough] amount to get a sufficient sample."

The trooper agreed Hurley was "completely cooperative throughout this process", but he chose not to allow her a second chemical breath test, which would have allowed her up to three more blows. Instead, he signed the machine's printed ticket, which recorded Hurley's insufficient sample, and advised he would charge her with a refusal to submit to the test. The trooper believed this action was justified because when considering whether to administer a second test, "[i]t's officer discretion on whether you believe that the subject is unable to produce a sufficient sample, or if the subject is refusing to produce a sufficient sample." The bureau of motor vehicles suspended Hurley's driver's license for one year because of her refusal to submit to a breath test.

Hurley objected to the refusal, arguing, first, she could not have refused the breath test because the trooper failed to follow the regulations for administering the test and, second, there was insufficient evidence to support the trooper's conclusion she had refused it. After a hearing,

the trial court upheld the trooper's decision, and a unanimous Court of Appeals affirmed, <u>Hurley v. State</u>, 56 N.E.3d 127 (Ind. Ct. App. 2016). We grant transfer, thus vacating the Court of Appeals decision, and reverse.

### Standard of Review

A trial-court order disposing of a petition challenging a motorist's suspension of driving privileges is a final judgment. <u>Burnell v. State</u>¸ 56 N.E.3d 1146, 1149 (Ind. 2016) (citing Ind. Code § 9-30-6-10(g)). Hurley, as the party seeking judicial review, bore the burden of proof by a preponderance of the evidence. I.C. § 9-30-6-10(f) (2010 Repl.). Because the trial court entered judgment against Hurley, she appeals from a negative judgment. <u>Burnell</u>, 56 N.E.3d at 1149-50. We will reverse a negative judgment only if it is contrary to law—meaning "the evidence leads to but one conclusion and the trial court reached an opposite conclusion." <u>Id.</u> at 1150. We consider the evidence in the light most favorable to the prevailing party and do not reweigh the evidence or judge witness credibility. <u>Id.</u> A party appealing from a negative judgment "has a heavy burden to establish … there was no basis in fact for the judgment rendered." <u>Id.</u> (citation omitted). At issue here is the meaning of a regulatory provision, Title 260, Section 2-4-2 of the Indiana Administrative Code. As with statutes, we interpret administrative rules de novo, affording the trial court's conclusion no deference. <u>Indiana Family and Soc. Services Admin. v. Culley</u>, 769 N.E.2d 680, 682 (Ind. Ct. App. 2002).

### Discussion

**When the results of an initial chemical breath test yield an "insufficient sample", the police officer administering the test must offer the subject a second test unless the subject clearly demonstrates a manifest unwillingness to submit to it.**

At issue is whether Title 260, Section 2-4-2 of the Indiana Administrative Code—the "Breath-Test Rule"—required the trooper to allow Hurley a second breath test before recording a refusal. We hold the Rule requires an officer to administer a second test after the first returns an insufficient sample unless the subject clearly manifests an unwillingness to take the test. On this record, there was no factual basis for the officer's determination that Hurley refused the test.

**A.** **Hurley challenges the determination that she refused to submit to a chemical test.**

"A person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." Ind. Code § 9-30-6-1 (2010 Repl.). When a law-enforcement officer has probable cause to believe a driver is intoxicated, the officer must give the driver an opportunity to submit to a chemical test. Id. § 9-30-6-2(a) (2010 Repl.). "If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges." Id. § 9-30-6-7(a) (2015 Supp.). If, despite notice of the consequences, the person still refuses the test, the officer must obtain the person's driver's license and submit a probable-cause affidavit to the prosecutor in the county where the alleged offense took place. Id. § 9-30-6-7(b) (2015 Supp.). If the officer's affidavit recites that a person refused to submit to a chemical test, the bureau of motor vehicles must suspend the person's driving privileges for one year for a first offense. Id. § 9-30-6-9(b)(1) (2015 Supp.). A person whose driving privileges were suspended is entitled to prompt judicial review, id. § 9-30-6-9(d) (2015 Supp.), but review is limited to two issues: (i) whether the officer had probable cause to believe the person was operating a vehicle while intoxicated and (ii) whether the person refused to submit to a chemical test, id. § 9-30-6-10(c) (2010 Repl.). Hurley bases her challenge on the second issue—that she refused the test—and she bears the burden of proof by a preponderance of the evidence. Id. § 9-30-6-10(f) (2010 Repl.).

**B.** **Whether the officer complied with the breath-test rule is relevant to whether the subject refused the test.**

The State argues that an officer's compliance (or not) with a chemical-test protocol is relevant to whether the test results are admissible, but not to whether the test was refused. We disagree. Instead, we approve of decisions from our Court of Appeals holding that a person does not refuse a chemical test if the officer failed to comply with the rules for conducting it. See, e.g., Vetor v. State, 688 N.E.2d 1327, 1329 (Ind. Ct. App. 1997) (vacating Vetor's license suspension and reinstating driving privileges when he was not properly "offered" breath test because officer did not comply with applicable statute by advising Vetor of consequence of refusing test). As explained in Steward v. State, 638 N.E.2d 1292 (Ind. Ct. App. 1994), a chemical test "cannot be 'refused' unless it is 'offered'; thus the propriety of the offer of a chemical test is relevant to the issue of whether it is refused." Id. at 1294 (holding Steward did not refuse urine test for marijuana:

4

offer of test was illusory because not administered properly; no sample was obtained during required three-hour statutory window).

An important corollary to this principle applies here: an officer conducting a chemical breath test must comply strictly with the department of toxicology's protocol for administering it. See, e.g., Upchurch v. State, 839 N.E.2d 1218, 1221-22 (Ind. Ct. App. 2005) (concluding Upchurch did not refuse test for alcoholic intoxication because officer did not follow approved method for administering test). Without the officer's strict compliance, the defendant cannot refuse the test—and any suspension of driving privileges premised on refusing the test cannot stand.

### C.  The breath-test rule presumptively requires a second test.

The department of toxicology's Breath-Test Rule outlines the proper procedure for a law-enforcement officer to administer the test. The department's regulations appear in Title 260 of Indiana's administrative code. Article 2 applies to breath-test operators and instruments. Rule 4 recites approved methods for administering breath tests. Section 2 outlines the approved method for conducting a breath test with the device at issue here—the Intox EC/IR II—and contains two subsections. Section 2(a) recites the twelve-step "method that shall be followed in making an analysis of breath for ethanol using the Intox EC/IR II breath test instrument". 260 Ind. Admin. Code 2-4-2(a) (West 2015 Supp.). The first nine steps are not at issue here. Steps Ten through Twelve provide as follows:

> STEP TEN: When "Please blow" appears on the instrument display, place a new mouthpiece in the breath tube. Instruct the subject to deliver a breath sample. Remove mouthpiece when prompted by the instrument display and discard.

> STEP ELEVEN: When "Please blow" appears again on the instrument display, place a new mouthpiece in the breath tube. Instruct the subject to deliver a breath sample. Remove mouthpiece when prompted by the instrument display and discard.

> STEP TWELVE: Print the instrument report and remove it from the printer; check the instrument report for the numerical value of the subject's breath ethanol concentration and the correct date and time and sign the instrument report where indicated.

Id.

Section 2(b) addresses how to proceed "[i]f any of the following messages appear on the instrument display or report":

> (1)     If "Please blow" appears on the instrument display after completion of STEPS ONE through ELEVEN, perform an additional breath test, beginning with STEP ELEVEN.

*   *   *

> (5)     If "Insufficient Sample" … is printed on the instrument report, perform an additional breath test, beginning with STEP TWO and proceeding through STEP TWELVE. If "Insufficient Sample" … is printed on the instrument report after this additional breath test:
>
> > (A) obtain an alternate chemical test for ethanol;
> >
> > (B) perform a breath test on another breath test instrument; or
> >
> > (C) if a numerical value for the subject's breath ethanol concentration is printed on any instrument report, check the instrument report for the correct date and time and sign the instrument report where indicated.
>
> If an "Insufficient Sample" … message is caused by the lack of cooperation of the subject, the breath test operator should record that the test was refused[.]

260 I.A.C. 2-4-2(b) (West 2015 Supp.).

The trooper initially had Hurley blow twice into the tube, as provided in Section 2(a). After the second blow, "Please blow" appeared on the instrument display, so the trooper had Hurley blow for a third time. After the third blow, the instrument report printed "Insufficient Sample". None of the three blows Hurley provided during this first test yielded a numerical value for her breath-ethanol concentration. At that point, the trooper believed Hurley was not cooperating and concluded she had refused the test.

The State defends the trooper's three-blows-and-you're-out determination as consistent with the Breath-Test Rule, pointing to this provision at the tail end of Section 2-4-2: "If an 'Insufficient Sample' … message is caused by the lack of cooperation of the subject, the breath test operator should record that the test was refused[.]" Id. § 2-4-2(b)(5) (West 2015 Supp.). Hurley, in contrast, objects that the State tries to justify the trooper's refusal determination by jumping to the end of the Rule, thus skipping over an intervening provision within Section 2(b)(5)

that required him to offer Hurley a second test. "If 'Insufficient Sample' … is printed on the instrument report, *perform an additional breath test*, beginning with STEP TWO and proceeding through STEP TWELVE." Id. (emphasis added). We hold the Rule *presumptively* required the trooper to offer Hurley a second test.

### D. A second test is not required if the subject clearly manifests an unwillingness to take the test.

But this presumptive obligation to offer a second test is not absolute. The Rule does not require an officer to administer a second test to a subject who obviously is not cooperating in providing one or more measurable, recordable breath samples. Officers must—and do—have discretion under the Rule to make the judgment call that the subject is being uncooperative and thus has refused the test. An officer needn't go through the motions to administer a test to an obviously uncooperative subject. Common sense doesn't require it, and neither does the Rule.

A subject who puffs out his cheeks pretending to blow but releases no breath into the device is an easy call. Jaremczuk v. State, 177 Ind. App. 628, 632, 380 N.E.2d 615, 618 (1978). So, too, is the subject who makes no bones about his unwillingness to cooperate. Hatch v. State, 177 Ind. App. 231, 232, 378 N.E.2d 949, 950 (1978) (telling officer "that was all [you're] going to get"). When a subject is clearly and manifestly uncooperative, an officer may exercise discretion to record a refusal and forego a second test.

This interpretation of the Rule is consistent with our recent holding in Burnell, 56 N.E.3d 1146. There, we held "a refusal to submit to a chemical test occurs when the conduct of the motorist is such that a reasonable person in the officer's position would be justified in believing the motorist was capable of refusal and manifested an unwillingness to submit to the test." Id. at 1151. If the subject clearly manifests an unwillingness to submit to the test, he is refusing to cooperate and triggers the exception in the last sentence of the rule, allowing an officer to record a refusal in lieu of offering a second test. But an officer cannot lightly conclude the subject is not cooperating. As discussed next, we believe the trooper jumped the gun in concluding Hurley was uncooperative.

7

**E.** **The trooper was required to administer a second test on this record because Hurley did not clearly manifest an unwillingness to take it.**

The record does not support the State's argument that "Hurley caused the insufficient sample by refusing to cooperate." If Hurley had verbally refused to submit to any further testing after the first breath test, as in Morrissey v. Department of Motor Vehicles, 647 N.W.2d 644, 648 (Neb. 2002), disapproved on other grounds by Hahn v. Neth, 699 N.W.2d 32, 39 (Neb. 2005); or had pretended to blow into the machine without doing so, as in State v. McIntyre, 863 N.W.2d 471, 475 (Neb. 2015); or had repeatedly blocked the machine's mouthpiece with her upper lip despite warnings that doing so would result in a deficient sample, as in Rader v. Director of Revenue, 490 S.W.3d 778, 779 (Mo. Ct. App. 2016), she could fairly be described as uncooperative—thus obviating the Rule's presumptive requirement of a second test. See also People v. Schuberth, 450 N.E.2d 459 (Ill. App. Ct. 1983) (defendant sucked on machine mouthpiece instead of blowing into it); People v. Doherty, 494 N.E.2d 933 (Ill. App. Ct. 1986) (defendant did not seal his lips around mouthpiece and thus air around mouthpiece escaped when he blew into it).

But Hurley did none of these things—or anything else clearly constituting a "manifest[] … unwillingness to submit the test." Burnell, 56 N.E.3d at 1151. As Hurley points out correctly, she voluntarily took a portable breath test at the scene; she agreed to the chemical breath test given at the police station; she submitted to the test; she was never told she wasn't blowing hard enough or that she needed to blow harder; and the trooper acknowledged "[Hurley] was completely cooperative throughout this process," and at no point did she "not cooperate with any of [his] instructions." We conclude there is no factual basis in this record to support the judgment that Hurley refused the test. She thus sustained her burden on judicial review of showing the evidence points to one conclusion—one opposite that reached by the trial court.

## Conclusion

Unless a subject clearly manifests an unwillingness to submit to a chemical breath test, Title 260, Section 2-4-2 of the Indiana Administrative Code requires a law-enforcement officer to administer a second test if the first returns an "insufficient sample" message. There is no factual basis for the trooper's determination that Hurley refused the chemical test. Because the trooper did not offer Hurley a second test, we reverse the judgment below and remand with instructions to direct the bureau of motor vehicles to vacate its suspension of Hurley's license and reinstate her driving privileges.

All Justices concur.