

FILED

Nov 29 2018, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Marc Lopez
Matthew Kroes
The Marc Lopez Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Harold Connor,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 29, 2018<br><br>Court of Appeals Case No.<br>18A-CR-442<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Steven J. Rubick,<br>Magistrate<br><br>Trial Court Cause No.<br>49G19-1703-CM-10257 |

**Najam, Judge.**

## Statement of the Case

[1] Brian Harold Connor appeals his conviction for operating a vehicle with an alcohol concentration equivalent to at least 0.08 gram of alcohol but less than 0.15 gram of alcohol per 210 liters of breath, as a Class C misdemeanor,

following a bench trial. Connor raises two issues for our review, one of which we find dispositive, namely, whether the trial court abused its discretion when it admitted into evidence the results of a chemical breath test.

We reverse.[1]

## Facts and Procedural History

On March 17, 2017, the Indianapolis Metropolitan Police Department ("IMPD") conducted a sobriety checkpoint near the intersection of Delaware Street and Michigan Street. At approximately 7:25 p.m., Connor arrived at the sobriety checkpoint, and IMPD Captain Don Weilhamer stopped Connor. Captain Weilhamer noticed that there "was an odor of alcoholic beverage coming from" Connor. Tr. Vol. II at 43. He further noticed that Connor's eyes were "bloodshot and glassy. He was also reacting rather slowly when [Captain Weilhamer] was asking him for his driver's license and registration." *Id.* Captain Weilhamer then asked Connor how much he had had to drink, and Connor responded that he had had two beers.

At that point, Captain Weilhamer asked Connor to step out of the car. Captain Weilhamer then administered a series of field sobriety tests to Connor. Connor passed the test that required him to stand on one leg, but he failed the horizontal gaze nystagmus test and the walk and turn test. Captain Weilhamer

---

[1] We held oral argument in this case on October 26, 2018, at Washington High School in Washington, Indiana. We thank counsel for their excellent advocacy and extend our appreciation to the administration, faculty, staff, and students of Washington High School for their hospitality.

then read Connor the implied consent advisement, and Connor agreed to take a chemical breath test.

[5] Captain Weilhamer escorted Connor to a local police station and administered a breath test using the Intox EC/IR II machine. When Connor blew into the mouthpiece for the test, he blew so hard that the instrument registered a "maximum flow exceeded" message. *Id*. at 51. Captain Weilhamer then waited approximately three minutes, replaced the mouthpiece, and administered another test using the same machine. The results of the second breath test showed that Connor had an alcohol concentration equivalent to 0.097 gram of alcohol per 210 liters of breath. After Captain Weilhamer received the results of the test, he placed Connor under arrest and searched his pockets. During that search, Captain Weilhamer found a small flask inside Connor's pocket that "smelled of alcohol." *Id*. at 64.

[6] The State charged Connor with one count of operating a vehicle while intoxicated, as a Class C misdemeanor; one count of operating a vehicle with an alcohol concentration equivalent to at least 0.08 gram of alcohol but less than 0.15 gram of alcohol per 210 liters of breath, as a Class C misdemeanor; and one count of possessing an open alcoholic container during the operation of a motor vehicle, as a Class C infraction.

[7] The trial court held a bench trial on November 13, 2017. During the trial, the State presented as evidence the testimony of IMPD Lieutenant Richard Kivett, who was the sobriety checkpoint commander on March 17. Lieutenant Kivett

testified about the details of the sobriety checkpoint. At the end of Lieutenant Kivett's testimony, Connor moved to suppress evidence that officers had obtained at the checkpoint on the ground that the checkpoint was unconstitutional. The trial court bifurcated the trial and allowed the parties to submit briefs on the constitutionality of the checkpoint. Thereafter, the trial court denied Connor's motion to suppress.

[8] The trial court continued the trial on February 5, 2018. During the second phase of the trial, the State presented the testimony of Captain Weilhamer as evidence. Captain Weilhamer testified about his observations of Connor at the sobriety checkpoint and about the results of the field sobriety tests. He also testified that, based on his observations of Connor and the failed field sobriety tests, he had decided to administer a chemical breath test to Connor. Captain Weilhamer then testified about the procedure he had followed when he administered the breath test. Specifically, he testified that, when he had attempted to perform the test the first time, "Connor blew so hard that the instrument registered maximum flow exceeded." *Id*. at 51. Captain Weilhamer testified that, after he had received the error message, he waited approximately three minutes and performed another test using the same machine.

[9] During the State's direct examination of Captain Weilhamer, Connor moved to suppress the results of the chemical breath test. In his motion, Connor asserted that the results of that test were inadmissible because the procedures Captain Weilhamer had followed when he administered the test had "not been approved in accordance with the rules" adopted by the Department of

Toxicology. *Id.* at 54. The trial court denied Connor's motion. The State then moved to admit the results of the chemical breath test as evidence, which the trial court admitted over Connor's objection.

[10] At the conclusion of the bench trial, the court found Connor guilty of operating a motor vehicle with an alcohol concentration equivalent to at least 0.08 gram of alcohol but less than .15 gram of alcohol per 210 liters of breath, as a Class C misdemeanor, but not guilty of the remaining two counts. The trial court entered judgment of conviction and sentenced Connor accordingly. This appeal ensued.

## Discussion and Decision

[11] Connor asserts that the trial court abused its discretion when it admitted into evidence the results of the chemical breath test. Connor initially challenged the admission of this evidence through a motion to suppress but now appeals following a completed trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.[2] *Lanham v. State*, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010).

[12] "'The admission of chemical breath test results is left to the sound discretion of the trial court and will be reviewed for an abuse of discretion.'" *Wolpert v. State*,

---

[2] Connor asserts that the trial court erred when it denied his motion to suppress. However, because Connor appeals after a completed trial, "the question of whether the trial court erred in denying his motion to suppress is no longer viable." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

47 N.E.3d 1246, 1247 (Ind. Ct. App. 2015) (quoting *Fields v. State*, 807 N.E.2d 106, 109 (Ind. Ct. App. 2004)). "An abuse of discretion occurs when the trial court's decision is contrary to the logic and effects of the facts and circumstances before it, or when the trial court errs on a matter of law." *Wilson v. State*, 973 N.E.2d 1211, 1213-14 (Ind. Ct. App. 2012). On appeal, Connor specifically contends that the trial court abused its discretion when it admitted the results of the chemical breath test as evidence because Captain Weilhamer did not administer the test "in accordance with the rules" set out by the Department of Toxicology. Appellant's Br. at 15.

[13] Indiana Code Section 9-30-6-5(a) (2018) provides that "[t]he director of the state department of toxicology shall adopt rules under IC 4-22-2 concerning . . . [t]he certification of the proper technique for administering a breath test." The results of a chemical breath test "are not admissible" if the techniques used in the test "have not been approved in accordance with the rules adopted" by the Department of Toxicology. Ind. Code § 9-30-6-5(d)(4); *see also Short v. State*, 962 N.E.2d 146, 149 (Ind. Ct. App. 2012). "Because the State is the party offering the results of the breath test, it has the burden of establishing the foundation for admitting the results." *Short*, 962 N.E.2d at 149. "Therefore, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed that procedure." *Id*.

[14] Pursuant to Indiana Code Section 9-30-6-5, the Department of Toxicology has adopted rules concerning the proper technique a test operator must follow when administering a breath test using an Intox EC/IR II breath test instrument,

which is the instrument Captain Weilhamer used to administer the breath test to Connor. In particular, those rules prescribe twelve steps a test operator is required to follow in order to properly administer a breath test. *See* 260 Ind. Admin. Code 2-4-2(a) (2014), http://www.in.gov/legislative/iac/iac_title?iact=260. Those rules also anticipate that, following those initial twelve steps, a test operator may receive one of six specified error messages, namely: "Please blow"; "Interfering Substance"; "RFI Detected"; "Mouth Alcohol"; "Insufficient Sample"; or "Time Out."[3] 260 I.A.C. 2-4-2(b). In the event a test operator receives one of those error messages, the rules provide for additional procedures the test operator must follow in order to re-administer the breath test. *See id*.

[15] Here, when Captain Weilhamer initially administered the breath test to Connor, the machine displayed an error message that read "maximum flow exceeded." Tr. Vol. II at 51. There is no dispute that the Department of Toxicology's rules neither identify that error message as a possible initial breath test result nor prescribe the technique that a test operator must follow when the instrument displays that message. As such, Connor contends that that error message was an "unanticipated problem" for which there is no direction in the administrative code and, therefore, Captain Weilhamer's resolution "has

---

[3] In his brief on appeal, Connor states that the administrative rules address the following error messages: please blow, subject sample interferent, subject sample invalid, radio interference, and subject sample incomplete. But those are the potential error messages that can appear on the report when the test operator uses the BAC DataMaster breath test instrument. *See* 260 I.A.C. 2-4-1.

neither been approved . . . by the Department of Toxicology nor codified in the Indiana Administrative Code." Appellant's Br. at 16. In essence, Connor contends that the breath test results were inadmissible because the Department of Toxicology has not designated the proper procedure to be followed when administering a breath test after having received a "maximum flow exceeded" error message, a message that is not addressed in the administrative code. We must agree.

[16] The "[i]ntroduction of a breath test lends the aura of scientific certainty to a prosecution for driving while intoxicated, often sealing the fate of the offender in the mind of the trier of fact." *Bowman v. State*, 564 N.E.2d 309, 311 (Ind. Ct. App. 1990), *summarily aff'd in relevant part*, 577 N.E.2d 569, 571 (Ind. 1991). "Thus, the detailed procedures to be followed," as adopted by the Department of Toxicology, "reflect a determination that the test should be as accurate and free from uncertainty as possible." *Id.*

[17] But neither our trial courts nor this court have the requisite knowledge to determine whether the technique that is to be followed after an error message is the correct technique when that error message has not been addressed in the administrative code. Rather, the Indiana General Assembly has tasked the Department of Toxicology with promulgating rules concerning the proper technique for administering a breath test because the Department possesses the specialized knowledge of how the breath test machines work. Because courts lack the necessary expertise that the Department of Toxicology possesses, our Supreme Court has made clear that "breath test results may be admitted only

when the test was conducted in 'strict compliance' with" the regulations adopted by the Department of Toxicology. *State v. Cioch*, 908 N.E.2d 1154, 1156 (Ind. 2009).

[18]  The State acknowledges that "[t]he Administrative Code is silent as to what officers must do when an error resulting from too much breath being blown appears." Appellee's Br. at 17-18. Nonetheless, the State contends that Captain Weilhamer "correctly presumed that a second test was required and administered a second test" because, "[f]or every one of the listed error messages that are outlined in the regulation, the next step is to 'perform an additional breath test[.]'" *Id.* (quoting 260 I.A.C. 2-4-2).[4]

[19]  While the State is correct that a test operator must perform an additional breath test if the operator receives any of the listed six error messages, the actual steps that a test operator must take when administering the second test vary based on the specific message received. For instance, if "Please blow" appears, the test operator is to perform an additional breath test, beginning with step eleven. 260 I.A.C. 2-4-2(b)(1). If after the second test, "No. 0.020 Agreement" is displayed,

---

[4] The State relies on *Hurley v. State*, 75 N.E.3d 1074, 1080 (Ind. 2017), to support its assertion that "[o]ur Supreme Court has interpreted [260 Indiana Administrative Code 2-4-2] to 'presumptively require[]' a second test to be administered if the first attempt at administration should fail, provided that the suspect is not refusing the test." Appellee's Br. at 17. But the State's reliance on *Hurley* is misplaced. *Hurley* specifically states that 260 Indiana Administrative Code 2-4-2 "requires an officer to administer a second test after the first test returns an *insufficient sample* unless the subject clearly manifests an unwillingness to take the test." *Hurley*, 75 N.E.3d at 1077 (emphasis added). Thus, our Supreme Court in that case did not interpret the entire regulation as requiring an officer to administer a second test if the first test should fail for any reason. Rather, that court's holding was limited to the procedure an officer should follow if the instrument displays one particular error message, which is not at issue here.

the operator must perform an additional breath test beginning with step two and proceeding through step twelve. *Id.* Similarly, if "RFI Detected"; "Insufficient Sample"; or "Time Out" is displayed, the operator should administer an additional breath test beginning at step two and proceeding through step twelve. *See* 260 I.A.C. 2-4-2(b)(3) and (5).

[20] However, for both the "Interfering Substance" and "Mouth Alcohol" messages, the operator is to administer a second breath test beginning at step one. *See* 260 I.A.C. 2-4-2(b)(2) and (4). For those errors that require the test operator to begin at step one, the test operator must wait fifteen minutes before administering the second test. *See* 260 I.A.C. 2-4-2(a). But for those errors that require the test operator to begin at step two, there is no set amount of time that a test operator must wait before administering the second test. *See id.*

[21] In other words, contrary to the State's assertion, there is no single protocol for a test operator to follow when administering an additional breath test after having received an error message. Rather, there is a significant difference in the procedure to be followed depending on the error message. Without direction from the Department of Toxicology on how to properly proceed following the "maximum flow exceeded" error message, we cannot say that Captain Weilhamer's decision to simply wait three minutes before administering a second test using the same machine was correct. We cannot determine whether Captain Weilhamer should have re-administered the test beginning at step one, which requires a fifteen-minute wait before the second test, or whether he should have re-administered the test beginning at step two, which does not

require the test operator to wait before administering the second test, or whether the Department of Toxicology would prescribe an entirely different protocol for the second test.[5]

[22] In sum, the evidence does not show that the technique Captain Weilhamer used to administer the second breath test to Connor was an authorized technique that produced an accurate test result. When Captain Weilhamer received an error message for which there was no corresponding protocol in the administrative code, he improvised. Because the technique he used had not been approved in accordance with a rule promulgated by the Department of Toxicology, as a matter of law the results of the breath test were not admissible. I.C. § 9-30-6-5(d)(4). The trial court therefore abused its discretion when it admitted that evidence. And we cannot say that the error in the admission of the breath test results was harmless, as the State did not present any other evidence to establish that Connor had operated a motor vehicle with an alcohol concentration equivalent to more than 0.08 gram per 210 liters of breath.[6]

---

[5] Until the Department of Toxicology provides a technique for a test operator to follow when the "maximum flow exceeded" error appears on the machine, the test operator can either obtain an alternate chemical test, such as a blood test, or perform a breath test on another breath test machine. Indeed, for each of the listed error messages, a test operator has the option of obtaining an alternate chemical test for ethanol or performing an additional breath test on another instrument instead of performing a second test on the machine in question. *See, e.g.*, 260 I.A.C. 2-4-2(b)(1)(B) and (C).

[6] The State did present as evidence Captain Weilhamer's testimony that Connor smelled of alcohol, that he had bloodshot and glassy eyes, and that he had failed two field sobriety tests. However, that evidence does not support his conviction for operating a motor vehicle with a specific alcohol concentration between 0.08 and 0.15 gram of alcohol per 210 liters of breath.

[23] Thus, we hold that the trial court erred when it admitted the results of the breath test as evidence because Captain Weilhamer had administered the test using a procedure that had not been approved by the Department of Toxicology. And we hold that the admission of the breath test was not harmless error, as it was the only evidence that the State presented to support his conviction. We therefore reverse Connor's conviction for operating a motor vehicle with an alcohol concentration equivalent to at least 0.08 gram of alcohol but less than 0.15 gram of alcohol per 210 liters of the person's breath.[7]

[24] Reversed.

Bailey, J., and May, J., concur.

---

[7] Connor also contends that the trial court erred under Article 1, Section 11 of the Indiana Constitution when it admitted evidence that officers had obtained pursuant to a sobriety checkpoint that he alleges was unconstitutional as conducted. But, as discussed above, the only evidence the State presented to support Connor's conviction was the result of the breath test. Because we hold that the only evidence to support his conviction was inadmissible, we need not address Connor's contention that the sobriety checkpoint was unconstitutional.