

**FILED**

Jul 20 2023, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Marc Lopez
Matthew Kroes
The Marc Lopez Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Bryan Priest,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 20, 2023

Court of Appeals Case No.
22A-MI-2845

Appeal from the
Hendricks Superior Court

The Honorable
Stephenie D. Lemay-Luken, Judge

Trial Court Cause No.
32D05-2012-MI-327

**Opinion by Judge Foley**

Judges Vaidik and Tavitas concur.

**Foley, Judge.**

[1] Bryan Priest ("Priest") appeals a judgment for an infraction for operating a commercial vehicle with an alcohol concentration equivalent ("ACE") of greater than 0.04 but less than 0.08. [1] Priest sought to challenge the admissibility of the sole evidentiary basis establishing his ACE. He was initially successful on an interlocutory appeal but failed to exclude evidence (albeit from a different source) of his ACE at the subsequent bench trial. On appeal, Priest argues that the trial court erroneously admitted the evidence for two reasons: (1) it constitutes hearsay; and (2) it does not comply with the Indiana Administrative Code. Both arguments fail, and we therefore affirm.

## Facts and Procedural History

[2] On the morning of August 13, 2019, Indiana State Trooper Nathaniel Hampton ("Trooper Hampton") observed a dump truck pull onto State Road 267 in Hendricks County. Trooper Hampton performed a "random inspection" of the vehicle, and, in doing so, smelled alcohol on the breath of the driver: Priest. Tr. Vol. II p. 6. Priest passed a series of field sobriety tests. He was then taken to the Plainfield Police Department for a certified breath test,[2] and at some point, indicated to the police that he consumed six Coors Light beers the previous night but stopped drinking at approximately 1:00 a.m. Priest was stopped shortly before 8:00 a.m. Based on an ACE of .042, the police issued Priest a

---

[1] Ind. Code § 9-24-6.1-6.

[2] The precise nature of the test is not entirely clear from the record, though it does appear to suggest that the machine employed is called an "Intox ECIR II." Tr. Vol. II p. 14.

traffic infraction ticket ("traffic infraction ticket") for operating a commercial vehicle with an alcohol concentration equivalent of 0.04 but less than 0.08. Indiana Code § 9-24-6.1-6.[3]

[3] The ensuing infraction was initially litigated in Plainfield Town Court, and—after a trial—the town court entered a judgment against Priest. At a subsequent proceeding, Trooper Hampton testified that he provided copies of the breath test report generated by the breath test instrument ("breath-test ticket") to both parties at the initial trial. Nevertheless, the breath-test ticket was "never admitted into evidence in the Plainfield Town Court . . . ."[4] Tr. Vol. II p. 11. On December 8, 2020, Priest exercised his right to appeal the matter to a court of record.[5]

[4] At a hearing on February 10, 2021, the parties disputed the admissibility of the breath-test results as recorded by the traffic infraction ticket. Trooper Hampton did not testify. The transcript of that hearing is not included in the record, but it

---

[3] A clarifying note is helpful before we proceed. The traffic infraction ticket is not the same as the breath-test ticket generated by the machine which reads ACE ("breath-test ticket") at the time of the test. It is, rather, simply a citation written and issued by the officer. And neither of those two documents are the same as the document Priest eventually submitted at trial. *That* document is a printout of the entry recording Priest's ACE in a central database maintained by the State Department of Toxicology ("database readout"). All three documents contain the ACE information, but, given the nature of the questions before us, the vehicle for that information matters.

[4] Examination of the town court records in accordance with the power of judicial notice confirms this fact.

[5] "A town court is not a court of record," I.C. § 33-35-5-7(b), and "[a]n appeal from a judgment of a town court may be taken to the superior, circuit, or probate court of the county within thirty (30) days after the rendition of the judgment and tried *de novo*[,]" I.C. § 33-35-5-9(b); *see also* Ind. Trial De Novo Rule 2 ("A defendant who has a statutory right to an appeal after a trial for an infraction or ordinance violation in a city or town court may request and shall receive the trial *de novo* as provided in this rule.").

appears that, once again, the breath-test ticket was not admitted. Rather, the State sought to prove Priest's ACE using only the traffic infraction ticket. The trial court ruled that the traffic infraction ticket was admissible. Priest filed a motion to certify the ruling for an interlocutory appeal, which the trial court granted. We reversed the trial court's ruling:

> The only evidence in the record related to Priest's ACE or B.A.C. is the traffic [ticket] itself, and that document does not state who was tested, what test was used, who did the testing, and what the test results were, all of which were in evidence in both *Mullins* and *Cranston*. [ ] Rather, the traffic ticket issued to Priest—which was completed and signed by an Indiana State Police Officer who did not appear at the suppression hearing or otherwise testify—stated only: "B.A.C. 0.042." App. at 42. That statement, alone, is clearly hearsay; it is an out-of-court statement offered to prove the truth of the matter asserted. *See* Evid. R. 801.

*Priest v. State*, 181 N.E.3d 1046, 1049 (Ind. Ct. App. 2022). We concluded that "the only evidence the State presented—the bald statement in the traffic [ticket] that Priest's "B.A.C." was '0.042'—was inadmissible hearsay." *Id.*

[5] On remand, the trial court conducted a bench trial on November 1, 2022. During the proceedings, the trial court asked: "where is the original ticket now, that's been printed off? That was printed off the machine at the time of the test?" Tr. Vol. II. p. 11. The State responded: "I do not know." *Id.* With the traffic infraction ticket deemed inadmissible for the purpose of proving Priest's ACE and the breath-test ticket missing and presumed lost, the State turned to the database readout, described as a "re-print" of a "physical copy of the

results" of the breath test taken from the database of the "Department of Toxicology." Tr. Vol. II pp. 10–11.

[6] Doctor Dana Bors ("Dr. Bors") of the State Department of Toxicology testified. She is the "breath test program supervisor." *Id*. at 13. She explained that the document that the State had in hand—the database readout—was not a copy of the original breath-test ticket, but rather a readout of the same data recorded by the breath-test ticket and kept separately in the Department of Toxicology's database. She described the process for generating the database readout as follows:

> The [breath test] instruments are set up to download each night, so, our central server will attempt to connect with all of the deployed [breath test] instruments across the state each night in order to download any tests that have been run on them that day. So, if they are able to retrieve those tests from a particular day, then that information would move from the internal memory in the instrument to that central database in our system which is called IntoxNet.

*Id*. at 17–18. In other words, breath test instruments both generate a breath-test ticket and also transmit the data included on the breath-test ticket (but not a copy of the breath-test ticket itself) to a central database. The data can then be printed out. Dr. Bors described the database readout as "an official record of the certified breath test results" and noted that the records they reflect are created automatically when a breath test is conducted. *Id*. at 18.

[7]     The State sought to admit the database readout as Exhibit 3, pictured here:





**IntoxNet MIS Report**
Report Generated 25 Jun 2020 at 10:50

Tests by EC/IR Serial Number and Date

| Instrument Serial Number 010858 |
|---|

**Test # 000441      Subject Test**

| | |
|---|---|
| Test Location 1 PLAINFIELD POLICE DEPT | Test Location 2 1075 WEST MAIN STREET |
| Test Location 3 PLAINFIELD, IN 46168 | Test Date 13 Aug 2019 |
| Test Time 08:55          System Check Passed | Remote/Local Local |
| Operator Last Name HAMPTON | Operator First Name Nathaniel |
| Operator Middle Initial L          Operator Certification Number A126931 | Certification End Date 04/30/2020 |
| Operator Agency Name Indiana State Police | Observation Date Began 13 Aug 2019 |
| Observation Time Began 08:31 | Operator Is Observer [Y/N]? Yes |
| Observer Last Name HAMPTON | Observer First Name Nathaniel |
| Observer Middle Initial L | County of Occurrence Hendricks |
| Reason for Test OWI | Comments |
| Crash | Driver License Number 8919877031 |
| License Expiration 00/00/0000 | State of Issue IN |
| Subject Last Name priest | Subject First Name bryan |
| Subject Middle Initial d          Subject D.O.B. 12/06/1968 | Gender Male          Final result 0.042 g/210L |
| Final result time 09:02 | Final result date 08/13/2019 |

| Data Type | Sample Value | | Sample Time |
|---|---|---|---|
| Data Type BLK | Sample Value 0.000 | | Sample Time 08:56 |
| Data Type CHK | Sample Value 0.079 | | Sample Time 08:56 |
| Data Type BLK | Sample Value 0.000 | | Sample Time 08:57 |
| Data Type SUBJ | Sample Value 0.042 | | Sample Time 08:58 |
| Data Type BLK | Sample Value 0.000 | | Sample Time 09:01 |
| Data Type SUBJ | Sample Value 0.045 | | Sample Time 09:02 |
| Data Type BLK | Sample Value 0.000 | | Sample Time 09:03 |
| Data Type CHK | Sample Value 0.079 | | Sample Time 09:04 |
| Data Type BLK | Sample Value 0.000 | | Sample Time 09:04 |

| | |
|---|---|
| Standard Type Dry Gas | Standard Target 0.079 |
| Standard Lot Number AG822701-I8P5LW | Standard Tank Number 8 |
| Standard Expiration Date 08/15/2020 | Tank Pressure 1041 |
| Barometric Pressure 737 mmHg | |
| Standard Type Dry Gas | Standard Target 0.079 |
| Standard Lot Number AG822701-I8P5LW | Standard Tank Number 8 |
| Standard Expiration Date 08/15/2020 | Tank Pressure 1036 |
| Barometric Pressure 737 mmHg | |
| Tamper Evident Stamp 88691569 | |

**Test Status Complete**

[8]     Priest argued that the database readout was inadmissible because it constituted hearsay and because it did not conform with the requirements of the Indiana Administrative Code.  The trial court rejected the hearsay argument without explanation.  With respect to the Administrative Code, the trial court stated as follows:

So, the Court finds as follows: number one (1), the breath test, the original or a copy is not present, there is no signature, so step 10 has not been complied with of the [ ] Indiana Administrative Code 260. However, the tests were performed according [sic], except for the signature, were performed according to Indiana Administrative Code, we had a trooper testify to all the steps. He followed the steps. If we would had [sic] the original ticket, or a, a certified copy, then I would be admitting it because he did not fail to do, comply with all the steps, if the test itself was performed correctly, I'm gonna [sic] find that Exhibit 3 is a reliable report, cannot be altered by humans, these were reliable report [sic], for this particular defendant, [ ]Priest, administered by Trooper Hampton, on a machine that was approved by the Indiana Department of Toxicology as required. The only difference in what Exhibit 3 is and what the original breath test ticket that we see every day in OWI cases, is that it's not signed by the trooper. And, perhaps, I don't [ ] mean to burden the Court of Appeals once again on this case, but perhaps it's a decision that needs to be made and so I am going to admit Exhibit 3.

Tr. Vol. II pp. 27–28. At the conclusion of the proceeding, the trial court found Priest "guilty" and then asked Priest's counsel: "Before I assess any fines and costs, are you going to appeal this?" *Id*. at 38. This appeal ensued.

## Discussion and Decision

[9] We afford a trial court broad discretion in ruling on the admissibility of evidence. *Sims v. Pappas*, 73 N.E.3d 700, 705 (Ind. 2017). We will disturb the trial court's ruling only where the trial court has abused its discretion. *Id*. "'An abuse of discretion occurs when the trial court's decision is clearly against the

logic and effect of the facts and circumstances before it.'" *Id*. (quoting *Turner v. State*, 953 N.E.2d 1039, 1041 (Ind. 2011)).

### I.    *Hearsay*

[10]    Priest first contends that the database readout is hearsay. Hearsay is an out-of-court statement offered in court for purposes of proving the matter asserted in the statement. Ind. Evidence Rule 801. Rule 801(a) defines "statement" as "a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." Thus, by the plain text of the rule, the statement in question must be made by a person. "Hearsay is not admissible unless it fits within some exception to the hearsay rule." *Craig v. State*, 630 N.E.2d 207, 209 (Ind. 1994) (citing *Miller v. State*, 575 N.E.2d 272 (Ind. 1991)); *see also* Evid. R. 802 (providing that hearsay is inadmissible); Evid. R. 803, 804 (collecting hearsay exceptions).

[11]    The State does not attempt to argue here, however, that the database readout falls within one of the hearsay exceptions; its argument is more fundamental than that. The State argues that the database readout does not constitute hearsay *by definition* because the statements it contains are automatically generated by a machine, and, thus, do not come from a person. We agree.

[12]    Thirteen years ago, we handed down *Cranston v. State*, 936 N.E.2d 342 (Ind. Ct. App. 2010), a case in which we determined that a breath-test ticket similar to the one produced in this case did not constitute testimonial hearsay for purposes of the Sixth Amendment to the United States Constitution. We first

examined whether the breath-test ticket was hearsay, reasoning that if the answer was no, then it certainly could not be testimonial hearsay. We represent the relevant passage as follows:

> It is well-settled that "[b]ecause a declarant must be a 'person,' a statement automatically generated by a computer cannot be hearsay." 13 Robert Lowell Miller, Jr., Indiana Practice: Indiana Evidence § 801.201 (3d ed. 2007); *see also Miles v. State*, 777 N.E.2d 767, 772 (Ind. Ct. App. 2002). So-called "'[m]echanical hearsay' is not 'hearsay' because the problem is one of relevance—was the machine operating properly when it spoke, not a problem of perception, recollection, narration, or sincerity on the part of the machine.'" Wright & Graham, *supra*, § 6371.2 n. 292. Mechanically-generated or computerized information may constitute hearsay when incorporating a certain degree of human input and/or interpretation. *See id*. § 6371.4 n. 53; *cf. Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S. Ct. 2527, 2532, 174 L.Ed.2d 314 (2009); *Pendergrass v. State*, 913 N.E.2d 703, 704–07 (Ind. 2009), *cert. denied*, —— U.S. ——, 130 S. Ct. 3409, 177 L.Ed.2d 323 (2010). But the B.A.C. Datamaster, for example, while requiring administrative input from the test operator and a breath sample from the test subject, calculates and prints a subject's blood alcohol concentration through a mechanical process involving no material human intervention. *See, e.g.*, *Luginbyhl v. Commonwealth*, 46 Va. App. 460, 618 S.E.2d 347, 351 (2005) ("[T]he breath test result is generated by a machine and does not depend on the administering police officer's 'veracity or perceptive abilities.'").

[13] Save for the interlocutory appeal in the present case, *Cranston* has not been cited for this proposition by an Indiana Court. To the extent that any doubt remains, we expressly reaffirm our endorsement of this mechanical hearsay rule. "The factors upon which the value of testimony depends are the perception, memory,

narration, and sincerity of the witness[.]" 2 McCormick On Evid. § 245 (8th ed.). And "the fundamental purpose of the hearsay rule [is] to preserve the right to cross examine the declarant." *Powell v. State*, 714 N.E.2d 624, 628 (Ind. 1999) (citing *Cain v. State*, 300 N.E.2d 89, 92 (Ind. 1973)). But the Intox ECIR II, or any other machine for that matter, cannot perceive or remember. It cannot narrate or feign sincerity. And it cannot be cross-examined. Those realities all apply with equal force to the servers that host the Department of Toxicology database that stores ACE test results. We find that *Cranston* and the mechanical hearsay rule are controlling here, and, thus, the trial court did not err in admitting the database readout over Priest's hearsay objection.[6]

## II. *Administrative Code*

[14] Our analysis, however, is not concluded. Priest contends that the breath test at issue failed to comply with the requirements of Section 260 of the Administrative Code ("the Code"):

> Indiana Code Section 9-30-6-5(a) (2018) provides that "[t]he director of the state department of toxicology shall adopt rules under IC 4-22-2 concerning . . . [t]he certification of the proper technique for administering a breath test." The results of a

---

[6] To the extent that Priest attempts to paint *Cranston* as inconsistent with our Supreme Court's decision in *Mullins v. State*, 646 N.E.2d 40, 48 (Ind. 1995) ("[b]reath-test results as shown by a printout are hearsay—an out-of-court statement offered to prove the truth of the matter asserted by the statement."), we agree with the State that the statements in *Mullins* were dicta. "'[S]tatements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become the law.'" *In re Adoption of J.T.D.*, 21 N.E.3d 824, 830 (Ind. 2014) (quoting *Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind. 1990)). The issues in *Mullins* concerned sufficiency of evidence and foundation pertaining to procedures associated with administering and certifying a breath test. Whether the test ticket is hearsay did not bear on the resolution of any of those issues.

chemical breath test "are not admissible" if the techniques used in the test "have not been approved in accordance with the rules adopted" by the Department of Toxicology. Ind. Code § 9-30-6-5(d)(4); *see also Short v. State*, 962 N.E.2d 146, 149 (Ind. Ct. App. 2012). "Because the State is the party offering the results of the breath test, it has the burden of establishing the foundation for admitting the results." *Short*, 962 N.E.2d at 149. "Therefore, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed that procedure." *Id*.

*Connor v. State*, 114 N.E.3d 901, 904 (Ind. Ct. App. 2018).

Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this chapter,[7] IC 9-30-5,[8] IC 9-30-9,[9] or IC 9-30-15[10] if:

(1) the test operator;

(2) the test equipment;

(3) the chemicals used in the test, if any; or

(4) the techniques used in the test;

---

[7] Entitled: "Implied Consent; Administrative and Evidentiary Matters."

[8] Entitled: "Operating a Vehicle While Intoxicated."

[9] Entitled: "Circuit Court Alcohol Abuse Deterrent Programs."

[10] Entitled: "Open Alcoholic Beverage Containers; Consumption of Alcohol in Motor Vehicles."

> have not been approved in accordance with the rules adopted under subsection (a).

I.C. § 9-30-6-5(d). In brief, if results of a breath test are submitted as evidence in a proceeding occurring pursuant to one of the four named chapters, that test must have complied with the rules promulgated by the Department of Toxicology and published in the Code. In order for the database readout to be violative of the Code, it must first, of course, be subject to the Code. And, as the State correctly points out, Priest was cited under Indiana Code Section 9-24-6.1-6, which is not one of the four named chapters.[11] Neither party has directed us to any statute—and we are aware of none—that subjects breath tests of commercial drivers to the rules and procedures that govern those tests for non-commercial drivers, or impacts the admissibility of the results of those tests. The Code simply does not apply to the database readout in this case.

[15] We are, therefore, faced with a strange and potentially dangerous conclusion: state law conditions the admissibility of breath test results on the strict compliance with rigorous standards—designed and adopted by the Department of Toxicology—for all breath tests unless the test is administered to the driver of a commercial vehicle cited under I.C. 9-24-6.1-6. We cannot, of course, know

---

[11] Title 9 of the Indiana Code governs motor vehicles. Article 30 concerns general penalty provisions for acts contravening the law where a vehicle is involved. Article 24, on the other hand, governs driver's licenses, including those issued as part of the commercial driver's license program in Chapter 6.1. That chapter contains its own, specific penalty provisions, but does not reference the codified rules and procedures for breath test administration. It is worth noting that no case, save our earlier opinion in this one, has referenced the statute under which Priest was cited.

whether that result is the product of considered intent by the General Assembly, or the product of mere inadvertence.[12] The objectives served by ensuring accurate breath tests are just as pertinent to drivers of commercial vehicles; indeed, the very fact that a *lower* ACE is prohibited for such drivers suggests the obvious: an intoxicated driver of a crane or semi-truck is likely to pose a greater risk to Hoosiers and their property than an intoxicated driver of a 1993 Dodge Neon. And the fact that the Code does not yet apply to commercial driver's license infractions yields another inequitable possibility: a truck driver might lose her entire livelihood based on the admission of breath test results derived from a lesser, unregulated test administration.[13] Lower standards could yield stark penalties.

[16] We must decline Priest's implicit invitation to hold that the Code applies: (1) to commercial driver's license cases; and (2) insofar as he argues that the database readout was unsigned, that the signature requirement applies to documents other than the test ticket. Priest's arguments pertaining to the Code are therefore necessarily unavailing. The fact that the database readout is not signed is of no moment: there is no requirement that it be signed, and even if

---

[12] For what it may be worth, the provision under which Priest was cited was enacted one year *prior* to the provision attaching the Code to breath tests administered under the aforementioned four named chapters.

[13] Federal Regulations dictate that a first-time offense of operating with an ACE above .04 shall have her commercial driver's license suspended for one year. 49 C.F.R. § 383.51; *see also* 49 C.F.R. § 383.3 ("The rules in this part apply to . . . all States.").

the Code contained one, the Code does not apply.[14] The same is true with respect to Priest's argument regarding the observation period, though we note that Priest was handcuffed and in a police car for some twenty-five minutes before the test was administered. This ensures that he had nothing to eat, drink, or smoke, which is the purpose of the observation period. *See Nasser v. State*, 646 N.E.2d 673, 680 (Ind. Ct. App. 1995).

[17] A word of caution: our decision today should not be read to suggest that the State may end-run around the necessity for breath test standards merely by citing commercial drivers under Indiana Code Section 9-24-6.1-6. Section 260 of the Code may not yet formally apply to citations under that statute, but we find it illuminating that the State laid the foundation to demonstrate that Trooper Hampton did, in fact, comply with the requirements of the Code. In other words, while demonstrating compliance with the Code may not be strictly necessary, it is certainly *sufficient* to demonstrate that the breath test administered was reliable. Though Indiana courts are not formally bound by the familiar *Daubert* standard, both this court and our Supreme Court have repeatedly held that we find its factors helpful in assessing the reliability of scientific tests and principles in an evidentiary context. *See, e.g., Turner v. State*, 953 N.E.2d 1039, 1050 (Ind. 2011); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 584 (1993). Thus it is of particular importance here that the

---

[14] We note that the Code requires only that the test ticket be signed, and Trooper Hampton testified that he did sign the test ticket.

database readout was accompanied by documentary proof that Trooper Hampton is a certified test administrator, detailed explanation of all the steps taken, proof that the test instrument had been calibrated and was in compliance with standards set by the Department of Toxicology, and the testimony of the person in charge of breath tests for the whole state describing the nature of the test and the procedures taken to ensure its accuracy and reliability. Though the requirements of the Code did not render the database readout inadmissible, it is worthy of note that significant foundation was required—in the alternative—to ensure admissibility. Accordingly, the trial court did not abuse its discretion in admitting the database readout over objections that it did not conform to the Code.

[18] Affirmed.

Vaidik, J. and Tavitas, J., concur.